UNITED STATES, Appellee

v.

Leszek K. L. KONARSKI, Master Sergeant, U.S. Army, Appellant.

No. 37,311.
CM 435385.

U. S. Court of Military Appeals.

Dec. 26, 1979.

For Appellant: *Captain Kevin E. O'Brien* (argued); *Colonel Edward S. Adamkewicz, Jr., Major D. David Hostler, Captain James P. Parwulski* (on brief).

For Appellee: *Captain Brian X. Bush* (argued); *Lieutenant Colonel R. R. Boller, Major David McNeill, Jr., Captain Harry J. Gruchala* (on brief); *Colonel Thomas H. Davis, Captain Douglas P. Franklin.*

*Opinion of the Court*

COOK, Judge:

A general court-martial convicted and sentenced the accused for an indecent assault upon, and sodomy with, a 10-year old girl. On review, the Army Court of Military Review directed a rehearing on the sentence because the trial judge had erroneously denied a defense request for witnesses for the sentence proceeding. In due course, accused was resentenced. On this appeal, he contends that the trial judge at the rehearing erred in overruling defense objections to the testimony of two government witnesses. We conclude that the testimony was properly admitted.

Before the Government presented the witnesses whose testimony is in issue, 9 former and active duty senior noncommissioned officers and 4 commissioned officers, one of whom was a retired colonel, testified for the accused. Three of the noncommissioned witnesses and one officer were duty personnel at the United States Disciplinary Barracks, Fort Leavenworth, who had been involved with the accused during his confinement in the facility pending review of his conviction. All the witnesses spoke very

highly of the accused's performance of duty. Eight of the noncommissioned witnesses recommended that the accused be retained in the service at his rank of Master Sergeant; two of the three noncommissioned officers at the Disciplinary Barracks testified that further confinement of the accused was not "needed"; one of these indicated that his opinion and recommendation were predicated, in part, on his "feeling" as a senior noncommissioned officer that the accused would not be "dangerous."

None of the commissioned officers was asked on direct examination whether he would recommend accused's retention in the service. When trial counsel asked that question of one witness, defense counsel objected on the ground the question went "beyond the scope of [the] direct examination." The trial judge sustained the objection. However, Captain Brinkman, who was in charge of the Reception Center at the Disciplinary Barracks and who had stated, on direct examination, that he believed the accused to be an "exceptional" inmate whom he would rank in the "top 10 percent" of the approximately 5,000 he had observed, was, without defense objection, allowed to answer cross-examination questions as to whether "behavior in confinement is indicative of what . . . [an inmate] would do outside." Captain Brinkman's answers were to the effect that, while he could not "really make a comparison," he believed confinement behavior "would have a good bearing" on behavior outside confinement.

In addition to the testimony mentioned, the defense presented an exhibit consisting of 16 pages. Included in this exhibit was a Letter of Appreciation from an Air Force Brigadier General to the commander of the accused's unit, the Berlin Brigade, in Germany, regarding a training exercise that had been held in Stuttgart. The letter mentioned the accused by name and cited him for "conduct and assistance" that reflected "the highest standards of military professionalism and integrity." Also, in the form of answers to questions asked by his counsel, the accused made an extensive unsworn statement.

After presenting evidence indicating that accused's record of performance of duty was not without flaws and that certain representations in accused's unsworn statement did not accord with entries in documents in his official records, trial counsel called the witnesses whose testimony was admitted over defense counsel's objection. The first witness was Major Freeman. At the time, Freeman was a "board qualified" psychiatrist, and the psychiatrist at the Disciplinary Barracks Mental Hygiene Clinic. He had conducted "several thousand" patient interviews. He was "in charge of the initial part" of accused's hospitalization at Munson Army Hospital, Fort Leavenworth, to evaluate the "risk of danger to the community" that might be posed by release of the accused from confinement pending the sentence rehearing.

Dr. Freeman testified that, with the exception of youthful offenders, good behavior in confinement did not give assurance of good behavior outside confinement. On the basis of interviews with the accused over a period of four days and a review of accused's records, including his mental hygiene record, he was of the opinion that the accused possessed a "characterological" condition that indicated that the risk of his repeating the offenses for which he was confined was "very great." He believed that treatment for the accused had "a much greater chance of succeeding when . . started in the confinement setting and then is pursued as a condition of parole," than treatment that was "solely outpatient." The interviews and the records also led Dr. Freeman to conclude that the accused "is very skillful at deception and states falsehoods with great skill and confidence."

The second government witness whose testimony is challenged as improper was Captain Turaids. He had a doctorate degree in Clinical Psychology from the University of Chicago and was Chief Psychologist in the Mental Hygiene Directorate at the Disciplinary Barracks. He met the accused in connection with an evaluation of accused's behavior and performance for rec-

ommendations on "clemency, parole, [and] custody evaluation." Dr. Turaids interviewed the accused and also reviewed his records. While acknowledging that accused's behavior in confinement was "exemplary," he nonetheless concluded that if the accused was released "the crime . . . [for which he was convicted] is very likely to be repeated." Continued confinement of the accused, he said, was "very definitely indicated." In his opinion, the accused's "truthfulness is extremely unreliable"; and he believed him to be a "very accomplished . . . liar."

Military law limits the kind of matter adverse to an accused that the Government may present during the sentence portion of a trial. Para. 75, Manual for Courts-Martial, United States, 1969 (Revised edition). As defense counsel argued at trial, the military practice does not authorize "a completely full hearing" comparable to the "full-type presentencing report" used in the civilian courts. The limitation in issue here is that which requires government evidence to qualify as "rebuttal" to that presented by the accused. Para. 75e, Manual, *supra*.

■ It will be recalled that two of the confinement personnel who testified for the accused specifically recommended against further confinement, and one of these conceded that his recommendation was, in part, predicated upon his "feeling" as an experienced noncommissioned officer that the accused "is not dangerous." Seven other defense witnesses recommended the accused be retained in the service at his rank of Master Sergeant. That recommendation clearly implied a belief that the accused would perform his military duties as well as he had before he committed the offenses of which he was convicted; it also implied a belief that the accused was not likely to repeat the crimes. That part of the testimony of Doctors Freeman and Turaids that dealt with the significance of accused's conduct in confinement and with the need for continued confinement as a safeguard against recidivism directly rebutted the contrary opinions and recommendations of these defense witnesses. We conclude that this part of the challenged testimony was properly admitted into evidence.

■ Regarding that part of the testimony of Doctors Freeman and Turaids concerning the accused's lack of credibility, defense counsel maintain it related only to the accused's unsworn statement. From that premise, they argue that the testimony did not "rebut statements of facts" in the unsworn statement and, therefore, constituted improper rebuttal, within the limitation imposed upon the Government by the provisions of paragraph 75c(2), Manual, *supra*.[1] Some of the discussion in and out-of-court hearing held before the witnesses were called refers to accused's credibility in regard to his unsworn statement, but, as trial counsel argued,[2] the opinion testimony was presented to rebut representations as to the accused's credibility that appeared in defense evidence, not the accused's unsworn statement. We hold, therefore, that this part of the testimony was also properly admitted into evidence.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge FLETCHER concurs.

1. In pertinent part, paragraph 75c(2), Manual for Courts-Martial, United States, 1969 (Revised edition), provides as follows:

   This unsworn statement is not evidence, and the accused cannot be cross-examined upon it, but the prosecution may rebut statements of fact therein by evidence.

2. We intend to ask both . . . [witnesses] whether they have had an opportunity to form an opinion concerning the credibility of Sergeant Konarski and what that opinion is. I might point out that that is specifically, excuse me, in rebuttal to the testimony earlier today of the first defense witness, Sergeant Major Gann, who testified that he, among the qualities that he thought Sergeant Konarski possessed which made him a superior NCO was that he was honest and reliable. We also note that in one of the defense exhibits that was submitted, specifically the letter signed by General Breedlove, dated 14 November 1972, that General Breedlove described Sergeant Konarski as having the highest standards of military professionalism and integrity, and we intend to specifically show that he does not have high standards of integrity because he is not credible. He is not honest.