## UNITED STATES

v.

**Staff Sergeant Michael L. OHRT, FR 521–90–0834, United States Air Force.**

### ACM S27616.

U.S. Air Force Court of Military Review.

Sentence Adjudged 30 July 1987.

Decided 27 April 1988.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi, Major Frank J. Spinner and Lieutenant Colonel Michael Sofocleous, USAFR.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni, Major Edward A. Goldner and Captain Suzanne Peters.

Before HODGSON, HOLTE, FORAY, MICHALSKI, LEWIS, SESSOMS, BLOMMERS and MURDOCK, Appellate Military Judges, En Banc.

## DECISION

MURDOCK, Judge:

This case reexamines the issue of proper sentencing testimony concerning rehabilitative potential.

Unlike its predecessor, the 1984 Manual for Courts–Martial included a provision authorizing the trial counsel to present "evidence of rehabilitative potential". R.C.M. 1001(b)(5). It states:

> (5) Evidence of rehabilitative potential. The trial counsel may present, by testimony or oral deposition in accordance with R.C.M. 702(g)(1), evidence, in the form of opinions concerning the accused's previous performance as a servicemember and potential for rehabilitation. On cross-examination, inquiry is allowable into relevant and specific instances of conduct.

This provision has been the subject of judicial attention since it appeared in the Manual. The most complete discussion of this subject by the Court of Military Appeals is in *United States v. Horner*, 22 M.J. 294 (C.M.A.1986). In *United States v. Beno*, 24 M.J. 771 (A.F.C.M.R. 1987), *pet. denied*, 26 M.J. 57 (1988), this court took a restrictive view of what could be presented as evidence of rehabilitative potential. We criticized a broad application of R.C.M. 1001(b)(5) and stated that "(r)ehabilitation potential testimony should consist of something other than a commander's shorthand recommendation that a punitive discharge be adjudged". 24 M.J. at 772.

Because this case presents important issues, we elected to consider it *en banc*. After full consideration of the case, we find we are evenly divided as to the result. This means the judgement of the trial court is affirmed by operation of law. *United States v. Peurifoy*, 47 C.M.R. 242, 253 (A.F.C.M.R.1973); *see* 5 Am.Jur.2d *Appeal and Error* § 902 (1962). Despite this mandated result, we feel it is important to give expression to our views to facilitate further review.

The appellant had nearly 12 years of military service, the last six being in the Air Force. As a result of a urine test which showed positive for marijuana, the appellant was charged with a single specification of wrongful use of marijuana. He pleaded guilty and was sentenced to a bad conduct discharge and reduction to airman. The error concerned here occurred during the sentencing portion of the trial.

Trial counsel called the appellant's commander during sentencing to testify about the appellant's rehabilitative potential:

MJ: Trial counsel, are you going to try to elicit an opinion with respect to the accused's rehabilitation potential?

TC: Yes, your honor.

MJ: Is there an objection from the defense to foundation based—

IDC:—No objection for that.

MJ: Since there is no objection, why don't you just press on quickly here to the guts of the testimony?

TC: Thank you, sir.

Q: Major Rauhecker, are you aware that Staff Sergeant Ohrt has been found guilty of the charge of illegal use of marijuana?

A: Yes, I am.

Q: And, sir, based on everything that you know about Staff Sergeant Ohrt, do you have an opinion about his potential for continued service in the United States Air Force?

IDC: Your Honor, I object. I think counsel—counsel's going to ask the rehabilitation potential, I have no objection.

MJ: Well, isn't that what the question was?

IDC: He said for continued service.

MJ: The objection is overruled. Go ahead.

Q: Sir, based on everything that you know, do you have an opinion as to Staff Sergeant Ohrt's potential for continued service in the United States Air Force?

A: Yes, I do.

Q: And what is that opinion, sir? ·

A: I believe he does not have potential.

This case was initially considered by a panel of this court. As part of that consideration, the panel specified two issues relating to the commander's testimony quoted above. The specified issues asked whether receipt of the testimony was error, and if so whether the error was prejudicial.

■ In his response to the specified issues the appellant asserts two bases for finding prejudicial error. First, that the testimony invaded the province of the court members to the extent that it seemed to advocate a punitive discharge. Second, that the testimony violated *United States v. Horner*, 22 M.J. 294 (C.M.A. 1986) in that the commander's position amounted to an opinion based solely on the nature of the offense. This assertion is drawn from the commander's statement that his policy, which he announces clearly to all arriving squadron members, is that "if you're allegedly involved with the use of drugs and found to be guilty that I would have no more use for your services in my command."

We note that the appellant's position is somewhat undermined by the commander's responses during recross examination. When asked whether his opinion of rehabilitative potential was based "solely upon the fact that—of Sergeant Orht's drug use", the commander responded, "and previous alcohol abuse." In fact, when the defense counsel moved to have the commander's testimony stricken because "it's clearly obvious it's based strictly upon this offense", the military judge denied the motion stating, "Well, of course, your initial cross examination did a good job of demonstrating otherwise." In sum, we are satisfied that the commander's recommendation against rehabilitation did not violate *Horner*.

We now turn to the assertion that the response was prejudicial error because it "seemed to advocate a punitive discharge" and therefore invaded the province of the court-martial members. This is the area where cases such as *Beno, supra,* have attempted to explore the dimensions of R.C.M. 1001(b)(5). We are concerned that the approach which has been suggested in some cases is too restrictive.

■ Counsel for both parties have agreed it was error to admit the commander's testimony as to the "potential for continued service". We do not reach the same conclusion. Our analysis begins with a recognition that sentencing considerations in courts-martial are inherently different from considerations in any civilian court, federal or state. In fact, although civilian courts and courts-martial are analogous in many ways, courts-martial do not serve the

identical functions as civilian courts. One reason for this is the difference in Constitutional basis between civilian courts and courts-martial. Courts-martial derive their authority from Congress' power "to make rules for the government and regulation of the land and naval forces" found in Article I of the Constitution. As such, it is not inappropriate that the military courts created under this authority might have a different perspective from courts created under authority of Article III. In exercise of its authority, Congress has, from time to time, passed penal codes applicable to the armed forces.

The present code, the Uniform Code of Military Justice, authorizes the President to prescribe rules governing pretrial, trial, and post-trial procedures, including modes of proof, for courts-martial. Article 36, U.C.M.J., 10 U.S.C. § 836. Under this authority, the President prescribed the Rules for Court–Martial, including R.C.M. 1001(b)(5), the rule being questioned by the appellant here.

After prohibiting certain punishments, Congress authorized the President to prescribe maximum limits for punishment for offenses under the Code. Articles 55 and 56, U.C.M.J., 10 U.S.C. §§ 855, 856. Some of the punishments the President has prescribed are similar to punishments for offenses tried in civilian courts. For example, confinement, fine, and hard labor without confinement are all similar to civilian punishments. On the other hand several of the punishments which have been prescribed are not only not found in civilian court systems, they would not even be possible in such a court system because they are employment-related punishments. Examples of these punishments are dismissal, dishonorable discharge, bad conduct discharge, forfeitures, and reduction in grade.

Courts-martial are nearly unique in dealing with people who are both subject to the judicial authority of the court and employed by the very same authority. They probably are unique in having criminal offense punishment authority which includes both traditional court punishments and employment-related punishments. This

uniqueness leads us to conclude that the provisions governing admissibility of sentencing information should be viewed somewhat differently from analogous information being submitted in a civilian criminal trial.

R.C.M. 1001(b)(5) governs admissibility of evidence of rehabilitative potential at sentencing. The Court of Military Appeals wrestled with the definition of the word "rehabilitate" in *Horner.* The Court stated that the battery commander in *Horner* seemed to limit his statements on potential for rehabilitation to "the appropriateness of the accused's restoration to duty." Resorting, by necessity, to a "civilian" dictionary, the Court concluded that

> [R]ehabilitation can denote both a return to a particular status and a return to society generally. Our view of "potential for rehabilitation" is consistent with Webster's more expansive definition, because the sentencing function encompasses more than the question of whether an accused should be restored to duty.

22 M.J. at 296.

Our position is not inconsistent with the Court of Military Appeals' quoted "expansive" view of rehabilitation. By stating that sentencing "encompasses more than the question of whether an accused should be restored to duty," the Court has recognized that the question of return to duty is at least part of the sentencing equation. It is our concern with cases which suggest that rehabilitation testimony must not go to the restoration question at all that has prompted our lengthy opinion in the present case.

Most of the questions about R.C.M. 1001(b)(5) have concerned the concept of rehabilitation. Courts have asked "rehabilitation for what?", or "rehabilitation when?" The restrictive view seems to be that the expression "potential for rehabilitation" means the possibility that the person can be rehabilitated for any purpose. This usually takes the spoken or unspoken form of "can the accused be rehabilitated away from this criminal act in such a way that he or she can function as a law abiding citizen?"

R.C.M. 1001(b)(5) suggests more than that to us. The rule authorizes evidence concerning "the accused's previous performance as a servicemember and potential for rehabilitation." The use of prior job performance and the juxtapositioning with potential for rehabilitation indicates a desire to obtain evidence on the accused's potential for on-the-job rehabilitation. That is, can he be rehabilitated and returned to his military job? Civilian sentencing authorities may think about the effect their sentence will have on the accused's employment, but they are usually not authorized to direct that an accused lose a job as part of the court's sentence. On the other hand, the employment-related punishments prescribed by the President indicate it would be inappropriate for court-martial sentencing authorities to ignore the question of retention.

■ R.C.M. 1001(a) states that the prosecution and defense may present matters during the presentencing portion of the court-martial which would "aid the court-martial in determining an appropriate sentence." We see nothing wrong with a witness stating his opinion, based on the accused's prior performance as a servicemember, that rehabilitation seems impossible and the accused should be separated. Conversely, testimony that the accused can be successfully rehabilitated and returned to duty should also be helpful to the sentencing authority.

■ Testimony about retention merely recognizes that discharges are authorized punishments for certain offenses under the code and that information about this sentence component could reasonably assist the sentencing authority in determining an appropriate sentence. However, it would be an inappropriate invasion of the sentencing authority's responsibilities for a sentencing witness to suggest a specific forfeiture, length of confinement, or specific type of discharge they feel would best suit the accused.

We can see little purpose for the drafters having included a section on rehabilitation potential in the sentencing provisions unless they intended the information to be used, at least in part, to make a decision on retention in the service. Testimony about the accused's general amenability to rehabilitation seems far less relevant to a court-martial's sentencing decision than testimony about whether the accused should receive a certain component of the authorized punishment for the offense being considered.

We recognize this position represents a change from some past cases which have applied a more restrictive interpretation to R.C.M. 1001(b)(5). However, we feel it is more consistent with the language of this new sentencing provision, and with the unique sentencing provisions applicable to courts-martial.

The Army Court of Military Review has also discussed this issue recently. *United States v. Susee*, 25 M.J. 538 (A.C.M.R. 1987). They take a non-restrictive view, similar to the one we are proposing here. We concur with their careful analysis. It is completely consistent with our approach in the present case.

In *Susee*, the accused's first sergeant testified that based on "his performance, his attitude, and [the] fact that there are two AWOL's in his history" his opinion was that "he [didn't] think the United States Army should spend any more time trying to rehabilitate him." 25 M.J. at 540. The appellant asserted that this testimony was overbroad and referred to specific instances of misconduct in violation of R.C.M. 1001(b)(5). In deciding that the testimony was appropriate, the Court quoted Mil.R. Evid. 701 which authorizes opinion testimony when it is "rationally based on a perception of the witness" and will be "helpful to a clear understanding of the witness or the determination of a fact in issue."

The Army Court then proceeded to what we feel is the crux of the argument in their case, and ours:

> *A fortiori*, parties proffering evidence in the nature of an opinion must be afforded a full and fair opportunity to lay the requisite foundation as long as inquiry into specific instances of conduct is not

permitted on direct examination. *See* R.C.M. 1001(b)(5).

In our view, the foundation which the trial counsel laid met the requirements of Mil.R.Evid. 701 and thus was proper. To limit appropriate foundational matters in support of opinion testimony would be to bar relevant and admissible evidence from the trier of fact at sentencing—a result fundamentally in conflict with the sound basis of the expanded presentencing practice now permitted in the military.

25 M.J. at 540–541.

We have reviewed the entire record of trial, the assignment of errors, and the government's reply thereto and have concluded that the findings and sentence are correct in law and fact and that no error prejudicial to the substantial rights of the appellant was committed. As mentioned before, because we are evenly divided, the judgment of the trial court including the findings of guilty and the sentence are

AFFIRMED.

Chief Judge HODGSON and Judges HOLTE and MICHALSKI concur.

Judge LEWIS, with whom Senior Judge FORAY, Senior Judge SESSOMS and Judge BLOMMERS join (dissenting):

We concur that the commander's opinion was based on something more than the offenses of which the appellant was convicted and, thus, was proper insofar as the guideline enunciated in *United States v. Horner,* 22 M.J. 294 (C.M.A. 1986), is concerned. However, since his opinion addressed potential for continued Air Force service, we believe that it effectively constituted a recommendation that a bad conduct discharge be imposed. Appellate counsel for both sides have agreed that the receipt of this opinion was error. In the circumstances of this case we conclude that the

error was prejudicial. Accordingly, we would set aside the sentence and order a rehearing.

We acknowledge that an elusive concept such as rehabilitative potential has the inherent quality of fostering confusion in the minds of members imposing sentence. In an alcohol or drug-related case, they may very well think in terms of a formalized program of education and counseling designed to alter behavioral patterns. Others may be reminded of the Air Force program of selecting certain sentenced prisoners for potential restoration to duty following a vigorous regimen of retraining. Of course, retention in the service is inevitably going to be viewed as an integral part of the rehabilitative potential issue by the sentencing authority in nearly any case in which a punitive discharge might be imposed as a sentence component. What we attempted to say in *United States v. Beno,* 24 M.J. 771 (A.F.C.M.R. 1987), *pet. denied,* 26 M.J. 57 (1988), is that it is not permissible for the government to exploit the ambiguous nature of rehabilitative potential by calling a commander or supervisor to present an opinion that is essentially a recommendation for a punitive discharge. As a general rule such an opinion is improper and potentially prejudicial. *United States v. Jenkins,* 7 M.J. 504 (A.F.C.M.R. 1979), *pet. denied,* 7 M.J. 328 (1979).

Had the drafters of R.C.M. 1001(b)(5) intended that rehabilitative potential opinions be narrowly structured, as was the one in this case, they would surely have indicated as much. While the principal opinion develops a persuasive argument that such opinions should be heard, we submit that the Manual has not yet altered military practice to this point.* In this regard we believe that that the principal opinion misapplies Judge Cox's discussion of rehabilitative potential wherein he observed that "the sentencing function encompasses more than the question of

---

* The principal opinion appears to suggest that any sentencing witness might testify that an accused should receive a particular component of punishment, such as punitive discharge or confinement, as long as the witness doesn't quantify the opinion by specifying what type of

punitive discharge (in a general court-martial, of course) or how much confinement. We believe that such a concept would be far removed from any reasonable view of the purpose and scope of rehabilitative potential testimony.

whether an accused should be restored to duty." *United States v. Horner, supra,* 22 M.J., at 296. Let us look at this issue realistically. If a majority of this court were to say that Judge Cox has endorsed the receipt of narrowly framed opinions relating to retention in the service by prosecution sentencing witnesses, Air Force trial counsel would seldom be motivated to seek any broader form of rehabilitative potential testimony. What we would have declared to be permissible would quickly become the norm. Is that what the Manual drafters contemplated? If so, why didn't they say so and spare us and our readers this semantic sparring?

Appellate government counsel argue that the error in allowing the commander to testify as reflected above was not prejudicial in this instance. We disagree. However, we must examine those aspects of the sentencing evidence and the military judge's instructions which might have had a tendency to mitigate the prejudice of the commander's testimony. Other opinions more favorable to the appellant were heard. Five noncommissioned officers who knew the appellant described his performance as commendable. All expressed the view that he could be restored to duty in the Air Force. Clearly, if the commander or another in a position of supervisory authority had been called as a rebuttal witness to counter these opinions, we would be faced with a much different situation. It would be difficult for us to fault an argument that the defense had opened the door for opinion testimony which would otherwise be objectionable in such situation. *United States v. Konarski,* 8 M.J. 146 (C.M.A. 1979). *See generally, United States v. Tipton,* 23 M.J. 338 (C.M.A. 1987); *United States v. Strong,* 17 M.J. 263 (C.M.A.1984). If the defense is willing to run the risk that the commander will be called to testify that an accused cannot be effectively utilized in his organization or that he should not be restored to duty under any circumstances, so be it. However, it is not appropropriate that we speculate whether the defense counsel in this case would have proceeded in the same fashion in questioning the defense sentencing witnesses if the

"preemptive" rebuttal testimony had not already been admitted in the guise of an opinion as to rehabilitative potential. By the time the defense sentencing witnesses were called no risk remained. The commander had already provided his opinion on continued service for the appellant. We do not find that the defense rescued the government from the consequences of prejudice merely by pursuing the only sound strategy which could have been employed under the circumstances.

The military judge, in his instructions on sentencing, advised the members as follows:

Now, members, you heard quite a few witnesses in this case tiptoe around the issue of what an appropriate sentence is in this case. I want you to understand that in our military justice system, members of the court-martial alone are entrusted with the responsibility of representing the community in arriving at an appropriate sentence for the accused. Therefore, neither the alleged desires of any one person or of any particular segment of society should be allowed to ... interfere with your independent function. For it is the court-martial alone that has seen and heard the evidence and must make the decisions.

Under the circumstances this was a prudent instruction and, admittedly, one that we would normally find as cleansing the error of the commander's testimony. However, we do not deem it sufficient to prevent a prejudicial impact in this instance when we view the testimonial error in the light of certain other instructions.

During the course of *voir dire,* the members voiced some confusion and concern with respect to their role in determining a sentence, particularly with respect to the question of whether or not the appellant should be discharged. At one point the military judge drew a distinction between the question of retention in the service as opposed to the more precise issue of a punitive discharge. Following additional queries from the members the military judge responded, in pertinent part, as follows:

.... [A]gain, I want to emphasize that this court-martial is not empowered to determine whether or not Staff Sergeant Ohrt should be discharged. The narrow question that you will have before you at the appropriate time is whether or not he should receive a bad conduct discharge, which is a punitive discharge. And the point of all this is we want to make sure that each of you can consider each of these possible punishments with an open mind. You're not in any way, shape or form—should you—are you required to give a certain punishment or not required to give a certain punishment ... You should consider all the principals [sic] of sentencing and all the various alternatives with an open mind, recognizing again that the issue will be whether or not Staff Sergeant Ohrt should receive a punitive discharge and not merely whether he should be retained or discharged from the service.

The members interrupted their deliberation on sentencing to make several inquiries. One of the members asked the military judge to reconfirm his understanding that the only discharge option which was available to them was a bad conduct discharge. The military judge responded affirmatively and proceeded to again instruct them in much the same manner as he had during *voir dire*. Additionally, he advised the members that the commander had other options he might consider if a punitive discharge were not adjudged, but he cautioned that this was not a proper matter for speculation on their part.

The military judge's instructions which we have outlined were entirely appropriate. However, when considered in the context of the commander's opinion as to continued service by the appellant, they had an unfortunate tendency to enhance the damage which was likely to occur by reason of its admission. We may infer that the members correctly understood that they were to consider the broad question of retention, if at all, only within the limited framework of their obligation to determine the appropriateness of a punitive discharge as part of their sentence. With this understanding, what meaning could the commander's opin-

ion on continued service convey other than a recommendation that a punitive discharge be adjudged? It is simply illogical to posit any other interpretation in light of the military judge's "tiptoeing" instruction interspersed with several instructions that the members must focus their attention on the appropriateness of a punitive discharge as opposed to the broader issue of retention. In essence, the commander's testimony, admitted over defense objection, had absolutely no discernible purpose other than to express his view that a punitive discharge was appropriate. Indeed, the fact that one of the members sought clarification of discharge options after instructions had previously been provided reflects the probable concern that the commander's testimony had generated.

In assessing the potential impact of the commander's testimony in these circumstances, we have considered the following quotation noted by appellate defense counsel to be apt: "In my view, there is no more persuasive evidence available to a military tribunal than the testimony of the accused's immediate commanding officer. This is particularly true, for obvious reasons, where the court-martial is composed of members as opposed to military judge alone." *United States v. Randolph*, 20 M.J. 850, 852 (A.C.M.R. 1985) (Pauley, J., dissenting/concurring in part). As we have noted, there is some likelihood that the military judge's instructions, appropriate and well intended, served to emphasize rather than diminish the impact of the commander's opinion. The only effective instruction, in our view, would have been an express direction that the commander's response be disregarded inasmuch as it bore no relevance to the issue of sentence appropriateness.

We have attempted to view this situation in as realistic a manner as possible. We must recognize that the appellant was before a special court-martial and was necessarily facing a jurisdictionally limited set of sentencing options. The bad conduct discharge assumes a central focus in this circumstance. As a noncommissioned officer convicted of drug abuse the practical pros-

pect that he would avoid the imposition of a punitive discharge was bleak. In a military environment this is an obvious reality, and we do not argue that it should be otherwise. This reality does not afford the prosecution license to improve upon an already strong position by attempting to engineer a foregone conclusion that a punitive discharge will be adjudged. The military judge, in effect, allowed the prosecution an impermissible and wholly gratuitous blow. It is unnecessary in most cases that trial counsel, either through ignorance or design, seek to land such a blow. In our view it is intolerable that military judges permit it to occur.

The military judge's instructions implicitly conveyed an important principle: a court-martial sentencing proceeding differs from an administrative discharge hearing. We are in complete agreement with that concept. Until such time as we receive contrary guidance from the Court of Military Appeals we decline to presume that the drafters of the 1984 Manual intended that an opinion as to rehabilitative potential might serve as a means for the prosecution to initiate a proceeding in the nature of an administrative discharge hearing. As we have previously noted, the defense bears the risk of focusing issues in much the same way that they are in an administrative discharge hearing and may do so if that is desired. This is not a preemptive option which the prosecution may elect to pursue while purporting to explore an accused's rehabilitative potential.

We concur with the principal opinion in affirming the findings of guilty. We would set aside the sentence. As the other errors asserted on appeal also relate to sentencing it is not necessary that we address them.