UNITED STATES, Appellee,

v.

David A. HORNER, Specialist Four,
U.S. Army, Appellant.

No. 53956.

SPCM 21591.

U.S. Court of Military Appeals.

Aug. 4, 1986.

For Appellant: *Colonel Brooks B. La-Grua, Lieutenant Colonel Arthur L. Hunt, Major Marion E. Winter, Captain James J. McGroary.*

For Appellee: *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Lieutenant Colonel Larry D. Williams, Captain Kathy J.M. Peluso.*

*Opinion of the Court*

COX, Judge:

In accordance with his pleas, appellant was convicted of one specification of distribution of hashish, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a. A military judge, sitting as a special court-martial, sentenced appellant to a bad-conduct discharge, confinement for 30 days, and accessory penalties. Acting pursuant to a pretrial agreement, the convening authority approved the sentence, and the Court of Military Review affirmed in an unpublished opinion. We granted review of two issues:

I

WHETHER THE MILITARY JUDGE ERRED WHEN HE ALLOWED THE BATTERY COMMANDER TO TESTIFY AS TO THE APPELLANT'S REHABILITATIVE POTENTIAL BASED SOLELY ON THE OFFENSE INVOLVED AND NOT ON THE APPELLANT AS AN INDIVIDUAL.

During the Government's case in aggravation of sentence, appellant's battery commander was called as a witness. He affirmed that appellant's "involvement with hashish" was not "compatible with the satisfactory performance of ... [his military] duties." Further, based on his observation of appellant's duty performance, the commander opined that appellant had been "an average soldier." Finally, trial counsel

asked the commander whether appellant had "rehabilitative potential." The commander responded, "I don't think he should be allowed to stay in the Army." The military judge "[n]oted" the non-responsiveness of the answer, but ultimately overruled a defense objection to the answer.

On cross-examination by defense counsel, the witness explained that his concept of rehabilitative potential, in the military context, involved the question of whether a servicemember should be given another chance to be a soldier. As the witness explained, his opinion that appellant lacked rehabilitative potential was based solely on the fact that drugs had been distributed. Specifically, the commander felt that no one who distributed drugs should be retained in the service, "[r]egardless of the characteristics of the individual involved." After clarifying the basis of the commander's opinion, defense counsel moved to strike it as being unrelated to appellant's potential for rehabilitation, and grounded "purely on ... [the battery commander's] view of the seriousness of the charge." The military judge's refusal to strike this portion of the testimony forms the basis of the first granted issue.

The President has the authority to establish presentencing procedures. Art. 36(a), UCMJ, 10 U.S.C. § 836(a). Pursuant to that authority, R.C.M. 1001(b), Manual for Courts-Martial, United States, 1984, provides:

*Matter to be presented by the prosecution.*

\* \* \* \* \* \*

(5) *Evidence of rehabilitative potential.* The trial counsel may present, by testimony or oral deposition in accordance with R.C.M. 702(g)(1), evidence, in the form of opinion, concerning the accused's previous performance as a servicemember and potential for rehabilitation. On cross-examination, inquiry is allowable into relevant and specific instances of conduct.

The drafters' analysis to the rule, Appendix 21–62, Manual, *supra,* states:

Subsection (5) is new. (Paragraph 75*b* (5) of MCM, 1969 (Rev.) is deleted here, as it is now covered in R.C.M. 701(a)(5). *Cf.* Fed.R.Crim.P. 32(c)(3).) Subsection (5) authorizes the trial counsel to present, in the form of opinion testimony (*see* Mil.R.Evid., Section VII), evidence of the accused's character as a servicemember and rehabilitative potential. Note that inquiry into specific instances of conduct is not permitted on direct examination, but may be made on cross-examination. Subsection (5) will allow a more complete presentation of information about the accused to the court-martial. The accused's character is in issue as part of the sentencing decision, since the sentence must be tailored to the offender. *Cf. United States v. Lania,* 9 M.J. 100 (C.M.A. 1980). Therefore, introduction of evidence of this nature should not be contingent solely upon the election of the defense. Information of a similar nature, from the accused's employer or neighbors, is often included in civilian presentencing reports. *See, e.g.,* Fed.R. Crim.P. 32(c)(2). Subsection (5) guards against unreliable information by guaranteeing that the accused will have the right to confront and cross-examine such witnesses.

Initially, we note some confusion as to the scope of the words "potential for rehabilitation" in R.C.M. 1001(b)(5). In the battery commander's view, the inquiry seemed to be limited to the appropriateness of the accused's restoration to duty. Neither the rule nor the drafters' analysis undertakes to define the terms. *Webster's Third New International Dictionary, Unabridged* 1914 (1981) defines "rehabilitation," in pertinent part, as:

[T]he action or process of rehabilitating or of being rehabilitated: ... the process of restoring an individual (as a convict, mental patient, or disaster victim) to a useful and constructive place in society through some form of vocational, correctional, or therapeutic retraining or

through relief, financial aid, or other re-constructive measure.

"Rehabilitate," in turn, is defined as:

[T]o restore (as a delinquent) by a formal act or declaration to a former right, rank, or privilege lost or forfeited: ... to re-store to a useful and constructive place in society through social rehabilitation.

In other words, "rehabilitation" can denote both a return to a particular status and a return to society generally. Our view of "potential for rehabilitation" is consistent with Webster's more expansive definition, because the sentencing function encom-passes more than the question of whether an accused should be restored to duty.

For the purpose of this litigation, we accept the drafters' statement that prog-nostications of a criminal defendant's reha-bilitative potential are routine and proper components of presentencing information because that proposition has not been chal-lenged here. Indeed, given the highly structured system of supervision and eval-uation employed universally in the armed forces, it seems likely that accurate and useful judgments of servicemembers' reha-bilitative potential can frequently be formed.

■ Nonetheless, we agree with appel-lant that the battery commander's com-ments here were inappropriate. As the record demonstrates, his testimony was plainly based not upon any assessment of appellant's character and potential, but upon the commander's view of the severity of the offense. Such testimony is simply not helpful to the sentencing authority. The President has, in full accordance with his authority,* established the sentence limitations for the various offenses. The witnesses' function in this area is to impart his/her special insight into the *accused's* personal circumstances. It would be ironic and absurd if R.C.M. 1001(b)(5) were con-strued to allow the parties to call witnesses

simply for the purpose of telling the court-martial what offenses, in the witnesses' estimation, require punitive discharges or lengthy confinement, etc.

■ However, notwithstanding our con-clusion that certain of the commander's comments should have been stricken, we perceive no prejudice to appellant. *See* Art. 59(a), UCMJ, 10 U.S.C. § 859(a). As the case was tried by military judge alone and the basis of the commander's opinion was well set forth, we are confident that the judge placed the testimony in proper perspective. Moreover, the sentence ad-judged was relatively lenient and, in any event, less than that bargained for by ap-pellant himself in the pretrial agreement.

## II

WHETHER THE MILITARY JUDGE ERRED BY FAILING PERSONALLY TO INFORM THE APPELLANT OF HIS POST–TRIAL RIGHTS AND BY FAILING TO ENSURE THAT HE UNDERSTOOD THOSE RIGHTS.

■ In *United States v. Rogers*, 21 M.J. 435 (C.M.A. 1986), we held that the military judge did not err in providing the accused with written instructions concerning his ap-pellate rights. Further, in light of Rogers' manifest exercise of his rights, the judge's error in failing personally to ascertain that he understood them was not prejudicial. *See* R.C.M. 1010. The facts in the instant case are similar to those in *Rogers*. There-fore, the second granted issue is without merit.

Accordingly, the decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

Judge SULLIVAN did not participate.

---

* Art. 56, Uniform Code of Military Justice, 10 U.S.C. § 856.