UNITED STATES, Appellee,

v.

Private E1 David L. HEFNER, 504–84–0817, United States Army, Appellant.

ACMR 8901337.

U.S. Army Court of Military Review.

26 Jan. 1990.

For Appellant: Captain Thomas A. Sieg, JAGC, Captain Alan M. Boyd, JAGC (on brief).

For Appellee: Colonel A.F. Arquilla, JAGC, Major Gary L. Hausken, JAGC, Captain Maria C. Fernandez, JAGC, Captain Timothy W. Lucas, JAGC (on brief).

Before DeFORD, KANE, and WERNER, Appellate Military Judges.

. OPINION OF THE COURT

DeFORD, Senior Judge:

Pursuant to his pleas, the appellant was convicted by a military judge sitting as a general court-martial of absence without leave, disobedience of a superior commissioned officer, attempting to resist apprehension, driving while intoxicated, and wrongful use of marijuana in violation of Articles 86, 90, 95, 111, and 112a of the Uniform Code of Military Justice, 10 U.S.C. §§ 886, 890, 895, 911, and 912a (1982 & Supp. III) [hereinafter UCMJ]. He was sentenced to a bad-conduct discharge, confinement for three years, and forfeiture of all pay and allowances. In accordance with a pretrial agreement, the convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement for fifteen months, and forfeiture of all pay and allowances.

On appeal, the appellant contends that the military judge erred in denying the appellant's motion to strike the testimony of two witnesses who offered opinions on the appellant's potential for rehabilitation. We disagree.

I

The offenses for which the appellant was convicted were committed at divers times between 23 January and 12 March 1989. During the sentencing proceedings, the Government introduced the testimony of two witnesses in aggravation, First Lieutenant (1LT) Todd Wood and Sergeant First Class (SFC) Jimmy Williams.

First Lieutenant Wood testified that he had been the appellant's platoon leader from November 1987 through January 1989. He rated the appellant as "very average" on duty performance but stated that the appellant's off duty performance "ruined his on duty performance." First Lieutenant Wood alluded to a number of

incidents involving alcohol abuse and described in general terms the efforts the command had made to rehabilitate the appellant. Overall, 1LT Wood testified that the appellant was "not effective" as a soldier. The trial counsel then elicited 1LT Wood's opinion—without objection—whether the appellant had "potential for further productive service in the military." First Lieutenant Wood testified that he did not because the appellant had not responded to efforts to rehabilitate him and had made no personal effort to reform his ways.[1] On cross-examination, the appellant elicited testimony that 1LT Wood did not "particularly care" for the "types of offenses [the appellant] committed" and that 1LT Wood would not approve of the continued service of any individual with "those types of offenses" even if that individual demonstrated excellent duty performance.

Sergeant First Class Williams testified that he had been the appellant's platoon sergeant since December 1988.[2] SFC Williams likewise testified that the appellant was average in his duty performance. With respect to his off-duty behavior, SFC Williams testified that the appellant had been reassigned to his platoon at a time when the appellant was already enrolled in a drug and alcohol abuse program, was already on probation with "the state detectives," and was recently released from the stockade. The appellant's reassignment to SFC William's platoon was a rehabilitative transfer. The trial counsel again asked without objection whether the appellant had "potential for further productive service in the military." SFC Williams responded that he did not because:

> I just found out today that he's got another DWI, making his fourth. He's come up positive on the urinalysis twice, he's gone AWOL on me once, he's—he's —to be quite honest, he's more trouble than he's worth.

On cross-examination, SFC Williams testified that he would not recommend discharge based solely on the appellant's duty performance. Asked if his opinion were based on the offenses for which the appellant was being sentenced, SFC Williams responded:

> Not just with those, sir. No, sir. Not only with those, but with his past record as well. Like I say, up to this point, the man has got four DWIs.

Trial defense counsel then elicited testimony that SFC Williams did not "particularly care for those types of offenses." SFC Williams further testified that, even in the case of an individual with an excellent performance record, he would adhere to his opinion of "no potential" based on the nature of the offenses.

On the basis of his cross-examination of these witnesses, the appellant, citing *United States v. Horner*, 22 M.J. 294 (C.M.A. 1986), moved to strike their testimony on grounds that these witnesses would discharge anyone with the appellant's "record" regardless of duty performance. The military judge denied both of these motions.

The stipulation of fact introduced into evidence details a chronology of extensive misconduct by the appellant. On 15 March 1988, the appellant received punishment pursuant to Article 15, UCMJ, for the offense of wrongful use of marijuana. On 27 March 1988, the appellant was arrested by civilian authorities for driving while intoxicated; the installation commander administered a letter of reprimand and revoked the appellant's on-post driving privileges for this offense. On 11 October 1988, the appellant was again punished pursuant to Article 15, UCMJ, for failing to repair to his appointed place of duty on 1 September 1988. That same night, the appellant was apprehended by military authorities for drunk driving at a time when his on-post driving privileges were yet suspended by prior order. The appellant was convicted by summary court-martial for this offense.

---

1. The court notes that the opinion expressed by each of these witnesses amounted to an opinion whether the appellant should be punitively discharged. Admission of such opinions is not permitted. *United States v. Ohrt*, 28 M.J. 301, 305, 306 (C.M.A.1989). However, the appellant made no objection; his failure to do so waived the error. Mil.R.Evid. 103(a)(1).

2. The appellant was tried on 20 April 1989.

On 19 April 1989, the appellant was again apprehended for drunk driving; the suspension of appellant's driving privileges was still in effect at that time.

## II

█ Even assuming that the testimony of these witnesses was admitted without adequate foundation in violation of *United States v. Horner* or amounted to the expression of an opinion that the court should impose a punitive discharge in violation of *United States v. Ohrt,* 28 M.J. 301 (C.M.A. 1989), we find no prejudice to the appellant. *See United States v. Ohrt,* 28 M.J. at 307; *United States v. Horner,* 22 M.J. at 296. Any impact the testimony on the appellant's rehabilitation potential may have had on the sentence adjudged paled to insignificance in light of other evidence admitted in aggravation.

The stipulation of fact in the case at bar notified the sentencing authority of other delicts by the appellant identical in nature to the offenses for which the appellant was convicted: a prior use of marijuana, one subsequent and two prior incidents of drunk driving, and two incidents of driving while his driving privileges had been revoked. These acts of uncharged misconduct, admitted pursuant to stipulation as permitted by *United States v. Glazier,* 26 M.J. 268 (C.M.A.1988), established the appellant's character as a repeat offender.

Further, the stipulation of fact and other evidence introduced during the proceeding established that the appellant had proven wholly unresponsive to every effort to rehabilitate him. These efforts included therapeutic counseling, administrative and nonjudicial actions, and a sentence imposed by summary court-martial.

Mindful of these facts and regardless of any other evidence, a sentencing authority would have concluded that a lengthy sentence to confinement was required in order to rehabilitate the appellant, *cf. United States v. Hughes,* 1 M.J. 346, 348 (C.M.A. 1976) (confinement is a vehicle to assure an offender's presence for rehabilitation), and that a punitive discharge was appropriate because the appellant lacked the "character

and will to become a responsible member of the military community." *United States v. Antonitis,* 29 M.J. 217, 220 (C.M.A.1989). Any adverse opinion evidence regarding the appellant's character added little if anything to the inescapably adverse assessment of the appellant's character which any sentencing authority would have drawn from the facts presented during the sentencing proceeding.

## III

Nevertheless, this case warrants further consideration because the facts present ramifications of the *Horner* decision which have not been previously considered by this court or the Court of Military Appeals. The first involves the question whether opinion testimony by a witness otherwise qualified to render an opinion regarding an accused's rehabilitation potential is *per se* inadmissible because the witness possesses an "intractably negative attitude" towards the offenses for which the accused has been convicted. The second involves the question whether opinion testimony may be based *in part* upon the witness' consideration of the offenses for which the accused stands convicted.

█ *Horner* and its progeny establish certain guidelines with respect to the admission of opinion testimony on an offender's potential for rehabilitation. First, a foundation must be laid to establish that the witness possesses "sufficient information and knowledge about the accused ... to give a 'rationally based' opinion." *United States v. Ohrt,* 28 M.J. at 304. Thus, the witness must have personal knowledge of the accused from which to form an opinion. *See* Mil.R.Evid. 602, 701. Second, the witness must "personalize," *United States v. Ohrt,* 28 M.J. at 307, his opinion to the offender by considering the accused's "character, his performance of duty as a servicemember, his moral fiber, and his determination to be rehabilitated." *Id.* at 304. Thus, the witness' opinion must be based on facts and factors relevant to the fact in issue, the accused's rehabilitative potential. Mil.R.Evid. 401, 405(a), 701. Finally, the conclusions voiced by the witness

must have a rational basis, *United States v. Gunter,* 29 M.J. 140, 141 (C.M.A.1989), and must not be premised solely upon the witness' view of the severity of the offense. *United States v. Horner,* 22 M.J. at 296. Thus, the witness' opinion must have some basis in the witness' perceptions or knowledge of the accused. Mil.R.Evid. 701. If the witness' opinion has no rational basis for his opinion or if his opinion is based solely upon the nature of the offenses, his testimony is more prejudicial than it is probative because it cannot aid the fact-finder beyond matters already of record. Mil R.Evid. 403.

## A

■ For the first time, this court must apply the foregoing rules to a case where a witness has both sufficient foundation for his conclusion that the offender has no potential for rehabilitation *and* possesses an inelastic attitude toward the offenses for which the offender has been convicted. In *United States v. Vega,* 29 M.J. 892 (A.F.C.M.R. 15 December 1989), the Air Force Court of Military Review adopted a *per se* rule of inadmissibility on the basis that any opinion offered by such a witness will invariably be premised upon his personal view of the offense and not upon an appropriate assessment of the character and potential of the accused. *United States v. Vega,* 29 M.J. at 894 (citing *United States v. Ohrt,* 28 M.J. at 304).

We respectfully decline to follow the rule of law adopted by the Air Force Court in *Vega.* In *United States v. Heriot,* the Court of Military Appeals declined to hold that a court member who "admits to harboring an opinion that many others would share—such as that a convicted drug dealer should not remain a noncommissioned officer or should be separated from the armed services—must automatically be excluded if challenged for cause." *United States v. Heriot,* 21 M.J. 11, 13 (C.M.A. 1985). In the *Horner* context, we are not considering a matter on par with an accused's right to an "impartial" sentence adjudged by members with "fair and open" minds. *See United States v. Smart,* 21 M.J. 15, 18 (C.M.A.1985). It would be in-

consistent to permit an individual who harbors a prejudice against certain offenses to adjudge a sentence, yet preclude the opinion of an otherwise qualified witness simply because the witness substantially shares that member's attitude.

Second, a ruling that the opinion of such a witness is *per se* inadmissible amounts to a holding that a witness possessing a negative view towards an offense or class of offenses is legally disqualified from testifying even though he offers otherwise valid and helpful insight into an accused's personal circumstances, *see United States v. Horner,* 22 M.J. at 296, which would assist the sentencing authority to determine an appropriate sentence. *See United States v. Ohrt,* 28 M.J. at 303. Society at large finds the commission of criminal offenses opprobrious; one would be hard pressed to find any witness who could truthfully testify that his abstract attitude toward an offense was neutral.

Finally, *Horner* and its progeny afford adequate safeguards against the possibility that a witness might mislead or unfairly influence the sentencing authority. *Ohrt* specifically forbids the witness from expressing an opinion that an accused should receive a punitive discharge. *United States v. Ohrt,* 28 M.J. at 305, 306. A broad reading of *Ohrt* forbids the witness from voicing any opinion whatsoever regarding the nature or extent of punishment: "The question of appropriateness of punishment is one which must be decided by the court-martial; it cannot be usurped by a witness." *Id.* at 305.

Moreover, a conclusion that an accused has no potential for rehabilitation must have some rational basis apart from the witness' attitude towards the offenses for which the accused has been convicted. *Id.* at 304. If a witness has no basis of knowledge from which to form an opinion, his testimony is not relevant and thus is inadmissible under the foundation requirement. *Id.* If the witness has a basis for forming an adverse opinion of an accused's rehabilitation potential but bases his opinion solely on the nature of the offenses charged and

without regard to his assessment of the accused's character, his opinion is likewise inadmissible. *Id.* Further, the witness' opinion will be inadmissible if the military judge finds that the witness has no rational basis for the opinion he articulates. *Cf. United States v. Gunter*, 29 M.J. at 141 (only a witness who has a rational basis for his conclusion may express an opinion).

**B**

Clearly, a mixed evidentiary issue is presented when a proffered witness has both an adequate basis for forming an adverse opinion of an accused's rehabilitative potential and an inelastic, negative attitude towards the offenses for which the accused has been convicted. *Compare United States v. Ohrt*, 28 M.J. at 304 (a witness must have a rational basis for his conclusions regarding the accused's character), *with United States v. Horner*, 22 M.J. at 296 (a witness may not base his opinion solely on the offenses for which the accused has been convicted). Rather than holding that the opinion of such a witness is *per se* inadmissible, we hold that the admissibility of such a witness' opinion is a matter within the discretion of the military judge as follows.

Prior to the time the witness' opinion is admitted into evidence, the accused must make a timely objection stating specific grounds or a motion in limine. Mil.R. Evid. 103(a)(1). Once it appears that the witness has both the requisite foundation for forming an adverse opinion regarding the accused's potential for rehabilitation and what may appear to be an inelastic, negative prejudice towards the offenses for which the accused has been convicted, the military judge must determine whether the opinion is in fact based upon an assessment of the accused's character and not solely upon the offenses for which the accused has been convicted. If the military judge finds that the witness' prejudice towards the offenses charged is *the* motivating factor underlying the opinion, it is inadmissible pursuant to *Horner*. *See also United States v. Stimpson*, 29 M.J. 768, 769, 770 (A.C.M.R.1989). If the military judge finds that the witness' prejudice is only *a* moti-

vating factor and that the witness' opinion otherwise constitutes a personalized assessment of the accused's character, it is admissible pursuant to *Ohrt*. Once the military judge has ruled that the opinion satisfies the requirements of *Ohrt*, the accused is entitled to expose the witness' prejudice towards the offense on cross-examination so that the sentencing authority may judge the credibility of and the weight to be accorded the opinion.

Applying this rule to the case at bar, we agree with the military judge that the opinions of 1LT Wood and SFC Williams were based upon personal knowledge and individual assessments of the appellant's character and potential even though both of these individuals harbored a prejudice towards the types of offenses committed by the appellant. Thus, their testimony was admissible under *Ohrt* and did not violate the prohibitions of *Horner*. Therefore, their testimony on cross-examination affected only the weight and not the admissibility of the opinions they voiced.

The appellant's personal allegation of error raised under *United States v. Grostefon*, 12 M.J. 431, 436 (C.M.A.1982), was included in the allegations of error raised by his appellate counsel and decided herein.

The findings of guilty and the sentence are affirmed.

Judge KANE and Judge WERNER concur.