UNITED STATES, Appellee,

v.

Robert WILSON, Jr., Sergeant First Class, U.S. Army, Appellant.

No. 63,104.

CM 8801174.

U.S. Court of Military Appeals.

Argued Feb. 14, 1990.

Decided Sept. 20, 1990.

For Appellant: *Captain Jeffrey J. Fleming* (argued), *Colonel Robert B. Kirby* and *Lieutenant Colonel Russell S. Estey* (on brief); *Captain Thomas A. Sieg.*

For Appellee: *Captain Randy V. Cargill* (argued); *Colonel Alfred F. Arquilla*

and *Lieutenant Colonel Daniel J. Dell'Orto* (on brief).

### Opinion of the Court

COX, Judge:

Appellant was charged with being absent without leave for 141 days and unlawfully using cocaine, in violation of Articles 86 and 112a, Uniform Code of Military Justice, 10 USC §§ 886 and 912a, respectively. He was tried at Fort Hood, Texas, by a special court-martial with officer and enlisted members.

At trial, the military judge ruled that the urinalysis evidence was inadmissible. Having relied on that data to support the cocaine charge, the Government then elected not to proceed with prosecution of that count. In accordance with his pleas, however, appellant was convicted of the absence-without-leave charge.

Notwithstanding 15 years of honorable military service and a good duty record, appellant was sentenced to be reduced to the lowest enlisted pay grade and discharged from the Army with a bad-conduct discharge. He appeals this sentence, contending that the military judge erred by permitting his first sergeant to express an opinion about his potential for rehabilitation. We granted review of the following issues:

### I

WHETHER THE MILITARY JUDGE ERRED IN ALLOWING, OVER DEFENSE OBJECTION, OPINION EVIDENCE ON APPELLANT'S LACK OF REHABILITATIVE POTENTIAL THAT WAS BASED PARTLY, IF NOT EXCLUSIVELY, ON "LIMITED–USE EVIDENCE."

### II

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR IN CONSIDERING TESTIMONY GIVEN BY APPELLANT'S CHAIN OF COMMAND REGARDING APPELLANT'S LACK OF POTENTIAL FOR CONTINUED SERVICE IN THE UNITED STATES ARMY.

The following testimony by the first sergeant gives rise to both issues:

Q. Now based on your evaluations of his duties, both as a S–4 NCO and as a Platoon Sergeant, the counseling you've done of him, and the circumstances surrounding the offense today, have you developed an opinion as to his rehabilitative potential as a soldier?

A. Yes, sir.

Q. And what is that opinion?

A. I don't believe that he got—that he would be able to function as a senior NCO in the United States Army.

Q. Would you want him back in your unit?

A. No, sir.

Q. Do you believe he can fulfill a role anywhere in the Army?

A. Not really, sir.

Addressing issue I first, appellant contends that, in large part, the first sergeant's conclusions were based on the fact that he was a cocaine user who had enrolled in a substance-abuse program and had not enjoyed much success in the recovery process.[1] He further asserts that

---

1. Appellant was "self-referred" to the substance-abuse program as an alcohol abuser. After "completing" the rehabilitation program, his command noticed that he was not acting normally. Accordingly, he was "command-referred" to the rehabilitation program, where he tested positive for cocaine use. Shortly before he departed on approved leave, during testing of nearly 100 percent of all unit personnel, appellant provided another urine specimen. Again, the specimen tested positive for cocaine use.

Appellant was charged only with the last drug use, but the military judge suppressed the re-

sults of the test which disclosed it. The basis of the ruling was not clarified. From the evidence it appears either to have been based upon the decidedly inept handling of the unit specimens that day—a chain-of-custody problem—or perhaps the judge believed the "inspection" was a "search," at least as to appellant. None of the above drug-related information was permitted to go to the court-martial members.

Appellant did not return to his unit when his leave expired, and this action is the AWOL of which he stands convicted. Evidence was

when an individual voluntarily enters such a program, there is supposed to be limited access to, and use of, information that he or she necessarily reveals during treatment. *See* Chapter 6, Army Regulation (AR) 600–85, "Personnel—General: Alcohol and Drug Abuse Prevention and Control Program" (November 3, 1986). He contends that, when a witness uses knowledge gained—either directly or indirectly— through a substance-abuse program as the basis for views about someone's potential for rehabilitation, that person is "using" such information in violation of the spirit and purpose of the limited-use rule.

■ In *United States v. Ohrt*, 28 MJ 301 (CMA 1989), we held that a witness could not express an opinion about an accused's potential for rehabilitation under RCM 1001(b)(5), Manual for Courts–Martial, United States, 1984,[2] unless "the opinion ... [is] expressed by a witness who has a rational basis for his conclusions, founded upon the accused's service performance and character." 28 MJ at 304. In the case at bar, the witness in question had a substantial basis upon which to form an opinion of appellant. *See also United States v. Hefner*, 29 MJ 1022 (ACMR 1990). The witness' opinion clearly was a reflection of his actual knowledge of appellant's work, personal life, and character for more than 2 years; it was not an expression of personal opinion concerning what punishment would be appropriate for the offense. Thus, the requirements laid down in *United States v.*

*Horner*, 22 MJ 294 (CMA 1986), were also satisfied.

■ Although there is nothing specific in the record to indicate that the witness based his opinion about appellant on information gained as a result of appellant's drug and alcohol use and abuse, we can infer that the witness knew of appellant's substance abuse problem and that his opinion was based, at least in part, on that knowledge.[3] Nevertheless, we are cited to nothing in the regulation which places such a broad prohibition on this indirect use of derogatory information, and we decline to extend the regulation to this extreme. Therefore, the fact that the witness' testimony may have been based in part on his knowledge of appellant's continuing failure to rehabilitate himself from a drug problem did not disqualify him from expressing his opinion.

■ We are left to decide whether the witness' opinion was *per se* inadmissible. *See United States v. Antonitis*, 29 MJ 217 (CMA 1989); *United States v. Brown*, 28 MJ 470 (CMA 1989). Unlike the witness in *Brown*, the witness here did not testify about uncharged misconduct, and the prosecutor did not make improper use of such evidence. The witness' opinion and testimony focused ostensibly on appellant's rehabilitative potential. Thus, uncharged misconduct did not slip into the record for consideration by the court-martial members.

presented to the court-martial that appellant had called the staff duty noncommissioned officer in charge and had requested a leave extension, claiming he was checking himself into a Shick clinic for rehabilitation in Dallas. The unit commander denied the request. Still, appellant did not return.

When unit officials attempted to contact this Shick clinic in Dallas, it was discovered that there was no Shick clinic in Dallas. The Fort Worth unit was the facility closest to Dallas, and it had no record reflecting that appellant was there. In addition, checking through its network, the Fort Worth clinic relayed to the unit that there was no one of appellant's name registered with any Shick clinic. During the plea-providence inquiry, appellant admitted he was in Washington, D.C., at the time his leave ex-

pired. He returned to military control 4½ months later in Brooklyn, New York.

2. This rule provides in pertinent part:

The trial counsel may present, by testimony or oral deposition ..., evidence, in the form of opinions concerning the accused's previous performance as a servicemember and potential for rehabilitation. On cross-examination, inquiry is allowable into relevant and specific instances of conduct.

3. In any event, the military judge denied the defense the opportunity to lay such a foundation. Therefore, for purposes of this appeal, we accept the defense representation as having been established.

The purpose of permitting opinion testimony under RCM 1001(b)(5) is to allow a witness to express an opinion without revealing uncharged misconduct. *United States v. Brown*, 28 MJ at 474 and at 475 (Cox, J., dissenting). In other words, a witness can consider all relevant information in arriving at an opinion about rehabilitative potential, but the information itself is not admissible unless there is an "inquiry . . . into relevant and specific instances of conduct" during cross-examination. RCM 1001(b)(5). This aspect of the rule's prescription was met in this case.

■ In *United States v. Horner, supra,* we held that a person's rehabilitative potential is based upon his entire character, morality, and determination to succeed. In forming an opinion about rehabilitative potential, knowledge of a person's success or failure in previous efforts to recover is extremely helpful. Thus, when a witness is asked for an opinion about an individual's "rehabilitative potential," the fact that the accused has failed to recover during past periods of treatment is an extremely important and rational basis upon which to form a conclusion. *United States v. Gunter*, 29 MJ 140 (CMA 1989). The caveat remains, however, that the opinion must be focused on the accused's rehabilitative potential and not on a witness' view of the severity of the offense or the appropriate punishment. *United States v. Ohrt* and *United States v. Horner*, both *supra.* The improper use of such information is not permitted. *United States v. Brown, supra.* No violation of these principles occurred in this case.

■ Appellant also argues that the opinions elicited in this case were tantamount to expressions of the witness' view of the appropriateness of a punitive discharge, not a position on rehabilitative potential, and thus the rules have been violated. *See United States v. Ohrt, supra* at

303, 305, and 306. In this respect appellant has a reasonable case to make. The two questions—"Would you want him back in your unit?" and "Do you believe he can fulfill a role anywhere in the Army?"—albeit not suggesting the character of a punitive discharge, nevertheless effectively suggest that a discharge would be suitable. They address something other than "rehabilitative potential," and we have found their preemptive use to be improper. *Id.; United States v. Aurich*, 31 MJ 95 (CMA 1990).

Nevertheless, appellant's trial objections went not to the witness' judgment of the desirability of retaining him in service, but to the underlying basis of the witness' opinion which we have ruled to be proper. Thus, the issue now complained of was waived at trial, and under the circumstances, we do not find the testimony to constitute plain error. *See* Mil.R.Evid. 103(a)(1) and (d), Manual, *supra.*

Sentencing by a court-martial is a personalized process, and each judgment is necessarily tailored to fit the crime and the accused. What we hope to accomplish in each of these cases is to give court-martial members or the military judge grounds upon which to sentence a person, which are based on facts which are relevant to that individual. *United States v. Horner* and *United States v. Ohrt*, both *supra.* We are satisfied that, in the present case, no errors were made which resulted in substantial prejudice to appellant's rights. Art. 59(a), UCMJ, 10 USC § 859(a).

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

SULLIVAN, Judge (concurring in part):

I join my Brothers only in their finding of waiver with which I completely agree.