**UNITED STATES, Appellee,**

**v.**

**Specialist Carlton H. SYLVESTER, 458–53–8684, United States Army, Appellant.**

**ACMR 9201249.**

U.S. Army Court of Military Review.

3 Jan. 1994.

---

For Appellant: Colonel Malcolm H. Squires, Jr., JAGC, Captain Victor A. Tall, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Major James L. Pohl, JAGC, Major Donna L. Barlett, JAGC (on brief).

Before WERNER, LANE, and RUSSELL, Appellate Military Judges.

## OPINION OF THE COURT

RUSSELL, Judge:

A military judge sitting as a special court-martial convicted the appellant, pursuant to his pleas, of four specifications of larceny in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921

(1988) [hereinafter UCMJ]. A panel composed of officer and enlisted members sentenced the appellant to a bad-conduct discharge, confinement for three months, forfeiture of $262.00 pay per month for three months, and reduction to Private E1. The convening authority approved the adjudged sentence.

This case is before the court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

The appellant contends that: 1) the trial counsel erred by referring in his sentencing argument to the appellant's admissions made during the providence inquiry; 2) the military judge erred in allowing his commander's testimony concerning rehabilitative potential; and 3) the court lacked jurisdiction because the military judge was not properly appointed. We have considered the foregoing contentions and conclude that only the second warrants further discussion.

## I.

■■■ Opinion evidence offered pursuant to Rule for Court–Martial 1001(b)(5) [hereinafter R.C.M.] is admissible if it is relevant to rehabilitative potential, rationally based on an individual assessment of an accused's character and potential, and not limited in scope to the question of whether the accused should be discharged from the military service. *See United States v. Horner,* 22 M.J. 294 (C.M.A.1986). However, even competent and probative R.C.M. 1001(b)(5) evidence must be excluded if presented, either directly or euphemistically, as a suggestion that an accused should be punitively discharged. *United States v. Ohrt,* 28 M.J. 301 (C.M.A.1989).

Captain Burrell testified in aggravation that he had known the appellant personally for approximately a year and a half, and had served as the appellant's company commander over a period of fourteen months. Immediately following this description of his opportunity to observe the appellant's personal characteristics, the trial counsel asked: "Based on your observations do you have an opinion as to Sylvester's rehabilita-

tive potential for future service, in the Army?"

The military judge then intervened, sua sponte, and instructed the trial counsel to omit the words "in the Army" from his question. Based on the military judge's instruction, the following question and answer ensued:

Q: Captain Burrell, based on your observation, do you have an opinion as to Sylvester's rehabilitative potential?

A: Yes, I have.

The trial defense counsel objected on the basis that he anticipated that Captain Burrell's opinion would be based solely on his view of the appellant's potential to be rehabilitated for service in the Army (notwithstanding the fact that the rephrased question called for only a generalized response.) The military judge overruled the objection, stating that trial counsel had asked the correct question. Captain Burrell responded, "My opinion is he has very little rehabilitative potential."

On cross-examination, trial defense counsel asked, "Captain Burrell, isn't it true, you believe that rehabilitative potential, your assessment of it, goes to military service, not for a productive citizen in the future?" Captain Burrell responded, "That's true."

Defense counsel then renewed his objection which the military judge again overruled.

## II.

The narrow issue before us is whether R.C.M. 1001(b)(5) opinion evidence must be excluded, if, during cross-examination, it is shown to be limited in scope solely to the witness's view of the accused's rehabilitative potential to return to military service, as opposed to his potential to rehabilitate for a return to society generally. The appellant contends, in essence, that an opinion limited solely to potential for "military service" is objectionable on either of two grounds: (1) it is outside the scope of R.C.M. 1001(b)(5) "rehabilitative potential" evidence as defined in *Horner;* and (2) the witness's admission on cross-examination

that his opinion was based solely on rehabilitative potential for "military service" breached the *Ohrt* rule against euphemisms. Reviewing for abuse of discretion by the military judge, we find no basis for relief.

#### A.

With regard to the appellant's first contention, the Court of Military Appeals, interpreting the term "rehabilitative potential" from R.C.M. 1001(b)(5), adopted an expansive definition consistent with a return to a particular status *and* a return to society in general. *Horner*, 22 M.J. at 296. Though the *Horner* court could have held that its broad definition of rehabilitative potential effected a complete proscription of R.C.M. 1001(b)(5) opinions limited to the military context, they did not. Indeed, the Court of Military Appeals has had ample opportunity to establish a bright line rule of inadmissibility of R.C.M. 1001(b)(5) evidence based on military service, but has not done so. Moreover, in *Ohrt*, the court stated that the *Horner* definition of "rehabilitative potential" was consistent with an Air Force policy regarding sentenced servicemembers that focused solely on a return to military service. 28 M.J. at 304. That policy provided:

Air Force policy is to restore to duty prisoner[s] who are thought physically, mentally, or morally qualified to become useful members of the Air Force.

Finally, Judge Sullivan, concurring in *United States v. Aurich*, 31 M.J. 95, 100 (C.M.A.1990), said it clearly:

*Horner* recognized the broad meaning of "rehabilitative potential" as intended in [R.C.M. 1001(b)(5)]. However, it did not purport to prohibit all comments on military "rehabilitative potential" as a component part of the bigger picture, assuming a proper basis for such an opinion had been established.

(Citations omitted.)

■ Inasmuch as opinions of rehabilitative potential limited to return to military status are within the scope of opinions contemplated by R.C.M. 1001(b)(5), they are not per se inadmissible. Their admissibility is a matter within the discretion of the trial judge and they may be admitted provided they are relevant and any prejudicial effect does not outweigh probative value. Military Rule of Evidence 403; *see United States v. Hefner*, 29 M.J. 1022 (A.C.M.R. 1990) *cited with approval in United States v. Wilson* 31 M.J. 91, 93 (C.M.A. 1990). Therefore, once a proper foundation has been established, whether an R.C.M. 1001(b)(5) opinion applies to military service goes to the weight to be given the evidence, not to its admissibility. In this case, given Captain Burrell's substantial opportunity to observe the accused's personal character, we find that the military judge did not abuse his discretion in allowing his opinion of appellant's rehabilitative potential for military service to be considered by the court-martial.

Accordingly, we hold that R.C.M. 1001(b)(5) opinion evidence is not per se inadmissible merely because it is shown to be based solely on the witness's view of the appellant's potential for military service.

#### B.

■ We now reach the appellant's second question of whether the reference to "military service" during cross-examination breached the rule against euphemisms. Military appellate courts have consistently held that there is no place in military practice for R.C.M. 1001(b)(5) opinion testimony that, though properly founded, employs the rubric of "rehabilitative potential" in combination with other unartful language to suggest, either directly or euphemistically, that an accused should be punitively discharged. These opinions, though reliable, are inadmissible because they allow the witness to usurp the question of appropriateness of punishment which is the sole prerogative of the court-martial. *See Ohrt*, 28 M.J. 301, and its progeny. This court has instructed trial counsel to scrupulously avoid the prejudice such unartful expressions of opinion may cause, by sticking to general questions and answers on direct examination. *See United States v. Stimpson*, 29 M.J. 768, 770 n. 2 (A.C.M.R. 1989).

■ Inasmuch as defense counsel's leading questioning on cross-examination went to establishing the limited probity of Captain Burrell's opinion (as opposed to establishing unlawful command influence, or a categorically improper foundation or scope) it imperiled the defense to the extent that the commander's answers might tend to suggest that the accused should be punitively discharged. If the trial counsel had put his question to the witness as he had originally phrased it (or as the defense counsel phrased his question), we would agree that a response focused on the words "military service" would have violated the *Ohrt* rule against preemptive euphemisms. *See Stimpson,* 29 M.J. 768.

However, because the military judge was alert to the interests of justice, trial counsel rephrased his question correctly and elicited a generalized opinion devoid of prejudicial implications. Inasmuch as it is appropriate for a witness to base an R.C.M. 1001(b)(5) opinion solely on his view of the accused's potential to rehabilitate for military service, the military judge's intervention protected the interests of justice by avoiding surplus language which would have unnecessarily triggered the *Ohrt* rule against euphemisms and deprived the court-martial of helpful, reliable evidence. It would be anomalous for this court to now invalidate that evidence because potentially sanctionable euphemistic language was wafted into the courtroom by a cross-examination tactic that, in retrospect, served no real defense objective.

■ Accordingly, we decline to extend the *Ohrt* bar on euphemisms to this case. We hold that trial defense counsel's introduction of euphemistic language through the phrasing of a leading question during cross-examination did not serve to invalidate otherwise probative R.C.M. 1001(b)(5) evidence where a proper foundation existed to establish relevance and rationality for the opinion, and the language used to elicit the opinion during direct examination did not violate *Ohrt*'s prophylactic rule against euphemisms.*

The findings of guilty and the sentence are affirmed.

Judge LANE concurs.

WERNER, Senior Judge (concurring in the result):

I concur that the findings and sentence should be affirmed. However, I believe the law dispositive of the issue raised by the appellant is far less complicated than the principal opinion suggests.

In *United States v. Aurich,* 31 M.J. 95 (C.M.A.1990), the majority opinion points out:

The fact that is of consequence under R.C.M. 1001(b)(5), is whether appellant has "rehabilitative potential." *United States v. Ohrt,* 28 M.J. 301 (C.M.A.1989); *United States v. Horner,* 22 M.J. 294, 296 (C.M.A.1986). We are of the view that a commander's statement that *he does not want an accused back in his unit*—absent a full, logical, and acceptable explanation establishing that the reason he does not want such accused in the unit is his lack of rehabilitative potential—proves absolutely nothing and is, therefore, inadmissible.

RCM 1001(b)(5) limits a witness' testimony to an opinion concerning "rehabilitative potential." It does not permit a full, logical explanation of the witness' opinion except on cross-examination. RCM 1001(b)(5) contemplates one question: "What is the accused's potential for rehabilitation?"—and one answer: "In my opinion, the accused has _____ [good, no, some, little, great, zero, much, etc.] potential for rehabilitation." Of course, it is beyond cavil that such a witness must have a proper foundation for his assessment, but that may only be ex-

---

* Defense counsel can test the validity of a witness' general opinion on rehabilitation potential, or the weight to be given such an opinion, by questions that probe the specifics of why the witness holds the stated opinion. However, unless the validity of the foundation for a general opinion is successfully challenged, the defense is left with the effect of the questions and the answers.

plored on cross-examination. *United States v. Kirk,* 31 M.J. 84 (C.M.A.1990). *United States v. Aurich,* 31 M.J. at 96.

In the instant case, the trial counsel's question to the commander witness, Captain Burrell, and the latter's response comported with the Court of Military Appeals' interpretation of the rule as set forth in *Aurich.* At no point, even in response to the questions posed on cross-examination by the defense counsel, did Captain Burrell exceed the linguistic shackles of *Aurich* by stating or implying, he "did not want the accused back in his unit." Furthermore, Captain Burrell's allegedly improper testimony was in response to a question posed by the defense counsel. Any error flowing from this was therefore induced by the appellant and should not inure to his benefit on appeal.