**UNITED STATES, Appellee,**

v.

**Specialist Alan S. YERICH, United States Army, Appellant.**

**ARMY 9500978.**

U.S. Army Court of Criminal Appeals.

31 Oct. 1997.

For Appellant: Captain John M. Head, JA (argued); Major William E. Cassara, JA, USAR (on brief); Lieutenant Colonel Michael L. Walters, JA.

For Appellee: Captain Steven H. Levin, JA (argued); Colonel John M. Smith, JA; Lieutenant Colonel Eva M. Novak, JA; Lieutenant Colonel Richard A. Gallivan, JA, USAR (on brief).

Before GORDON, JOHNSTON, and ECKER, Appellate Military Judges.

## OPINION OF THE COURT

ECKER, Judge:

Consistent with his pleas, appellant was convicted by a military judge of conspiracy to distribute marijuana, disrespect to superior noncommissioned officers, willful disobedience of an order, drunk and disorderly conduct, seven specifications detailing acts of drug misconduct, and a violation of the federal "crack house" statute (21 U.S.C. § 856(a)(1)), assimilated through the general article, in violation of Articles 81, 91, 92, 112a, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 901, 902, 912a, and 934 (1988)[hereinafter UCMJ]. A panel of officers sentenced appellant to a bad-conduct discharge, confinement for three years, and forfeiture of all pay and allowances. In accordance with a pretrial agreement, the convening authority approved only so much of the adjudged sentence as provides for a bad-conduct discharge, confinement for three years, and forfeiture of $250.00 pay per month for forty-eight months.[1]

---

1. The convening authority's action, and the subsequent promulgating order, erroneously includ-

Through his brief and oral argument, appellant assigns four errors. The government concedes multiplicity in Assignments of Error I and II.[2] Appellant's claim of unreasonable multiplication of charges, set out in Assignment of Error III, is without merit. We will take corrective action concerning the conceded errors in our decretal paragraph.

In Assignment of Error IV, appellant asserts for the first time on appeal that he suffered substantial prejudice due to the introduction of impermissible rehabilitative potential testimony during the government's sentencing case, that forfeiture[3] does not apply, and that he is therefore entitled to a rehearing on sentence.

## FACTS

During the government's sentencing case-in-chief, the trial counsel called appellant's company commander and four senior noncommissioned officers (NCOs), two of whom had supervised appellant, to provide testimony in aggravation of appellant's offenses. Each witness testified to substantial contact with appellant as well as observation of his behavior and duty performance, or both. They also testified concerning his character and concluded with opinions about his potential for rehabilitation. The company commander testified first, and none of the following witnesses commented on, adopted, or was referred to the testimony of a previous witness.

This testimony, individually and collectively, reflected that appellant's performance as a mortarman was very good, especially during field exercises. Further, appellant was

not considered an evil or bad person. However, he was identified as a focal point for the unit's drug problems as well as an individual who continued to engage in serious misconduct while pending court-martial. The witnesses also testified to significant character flaws, including disrespectfulness, a quick temper, minimal self-control, and an unwillingness to accept correction and accountability.

One of the supervising NCOs, Sergeant First Class (SFC) Y, described in some detail the appellant's duty performance and behavior, particularly as it related to field exercises and a deployment. Upon this foundation, trial counsel asked for his opinion concerning appellant's rehabilitative potential. SFC Y limited, sua sponte, the scope of that opinion as follows:

Q: And, have you formed an opinion as to his rehabilitative potential?

A: I can form one as to his military rehabilitation.

Q: What is that opinion, sir [SIC]?

A: For military, I don't think so.

Civilian defense counsel did not object to any of SFC Y's testimony. Except for one objection relating to uncharged misconduct during the company commander's testimony, he chose to attack the government's evidence solely through cross-examination. None of the panel members posed questions for the five government witnesses.

On appeal, appellant now argues that the company commander and the two senior noncommissioned officer supervisors lacked sufficient knowledge about him to render a rationally based opinion concerning rehabili-

---

ed reduction to the grade of Private E1 as part of the adjudged and approved sentence (appellant was a Specialist E4 at the time of sentencing). However, a corrected action and order have since been published.

**2.** The multiplicity issues involve one specification each under Additional Charge I and Charge IV and two specifications under Additional Charge IV. These groupings separately charged possession and use of different drugs on two separate occasions where the possession and use involved one discrete act. *See United States v. Johnson,* 26 M.J. 415 (C.M.A.1988); *United States v. Thomas,* 43 M.J. 903 (Army Ct.Crim.App.1996); *United States v. Wilson,* 45 M.J. 512 (Army Ct.Crim.App.

1996). However, at trial these groupings were held multiplicious for sentencing. *But see United States v. Oatney,* 45 M.J. 185 (1996); *United States v. Morrison,* 41 M.J. 482 (1995).

**3.** *See United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) (forfeiture is a failure to object; waiver is an express, knowing relinquishment or abandonment of an objection); *United States v. Britton,* 47 M.J. 195, 200–01, 203–04 (Effron, J., concurring) (1997). *But cf. United States v. Carroll,* 43 M.J. 487, 488 (1996); Rule for Courts–Martial 905(e). It is in the context of forfeiture that the court in *Olano* addresses application of the "plain error" doctrine.

tative potential. Thus, even though there was no objection at trial, admission of this testimony constituted plain error making forfeiture inapplicable. Alternatively, he asserts that the testimony of SFC Y was a euphemism calling for a punitive discharge; that this euphemistic testimony constitutes command influence because (a) it was a component of chain of command and supervision testimony which (b) included the testimony of a commanding officer; and therefore forfeiture does not apply even in the absence of plain error. For the reasons noted below, we disagree.

## LAW

Beginning with *United States v. Horner*, 22 M.J. 294 (C.M.A.1986) and *United States v. Ohrt*, 28 M.J. 301 (C.M.A.1989), the Court of Military Appeals (now the United States Court of Appeals for the Armed Forces) set limits on the government's use of opinion testimony for sentencing under Rule for Courts–Martial 1001(b)(5) [hereinafter R.C.M.]. These limits were summarized in *United States v. Cherry*, 31 M.J. 1 (C.M.A. 1990), as follows:

(a) The "primary thrust" of the cases is that the Manual rule only permits a commander's opinion on rehabilitative potential which is "rationally based on individual assessment of a servicemember's character and potential." Opinions based solely on the severity of the offense are never admissible. *Cherry*, 31 M.J. at 4.

(b) As a secondary matter, the commander's testimony must not include his opinion as to an appropriate punishment for an accused. Two reasons for this limitation exist: such an opinion could invade an exclusive province of the court-martial; and where the testimony was that of an officer in command, it constituted unlawful command influence. *Cherry*, 31 M.J. at 5.

(c) The decision in *Ohrt* created the "euphemism rule" as a corollary to the second limitation. Thus, "*a commander*" could not impliedly advocate a punitive discharge by carefully wording his opinion so that it stopped short of an express call for such a punishment. *Id.*

As noted in *United States v. Malone*, 38 M.J. 707, 709–710 (A.C.M.R.1993), the *Horner/Ohrt* rules were designed specifically to address the court's concern about the impact of commander opinion testimony. *But see United States v. Corraine*, 31 M.J. 102, 106 (C.M.A.1990)(suggests that senior NCO testimony could implicate the same or similar issues).

This court's decision in *Malone* also summarized a number of procedural principles concerning R.C.M. 1001(b)(5) opinion testimony. Specifically, it observed that:

> Absent plain error, a failure to object to the admission of opinion evidence on grounds that the witness rendering the opinion did not have a rational basis for it waives the error.... Improperly admitted evidence constitutes plain error when it is obvious, substantial, and unfairly affects the fairness, integrity, or public reputation of the proceedings.... What constitutes plain error in the context of an R.C.M. 1001(b)(5) violation depends upon the circumstances surrounding the admission of the opinion evidence.

*Malone*, 38 M.J. at 709 (citations omitted). *Accord United States v. Powell*, 45 M.J. 637 (N.M.Ct.Crim.App.1997) (citing *Olano*, 507 U.S. at 732–34, 741, 113 S.Ct. at 1776–78, 1781–82).

The Navy–Marine Corps Court of Criminal Appeals in *Powell* observed that, "Plain error exists only when there is error, the error is obvious, **and** the error adversely affects some substantial right of an accused.... The burden of persuasion with respect to these three elements of plain error rests with the appellant." *Powell*, 45 M.J. at 641 (citations omitted). *See also* Article 59(a), UCMJ, 10 U.S.C. § 859(a).

## ANALYSIS

■ Appellant's creative, interconnected arguments fail on both the facts and the law. Concerning his complaint about lack of foundation, the record amply establishes that the government's sentencing witnesses demonstrated a "rational basis" for their opinion testimony. *See* Military Rule of Evidence 701 [hereinafter Mil.R.Evid.]. Their personal knowledge of appellant was more than

sufficient to meet the foundational requirements for opinion testimony. *See, e.g., United States v. Wilson,* 31 M.J. 91, 92–93 (C.M.A.1990) (knowledge of appellant's work, personal life, and character sufficient to establish a rational basis for opinion testimony). Accordingly, we reject appellant's claim of error based on lack of foundation (e.g., "rational basis") for this testimony. Finding no error, we necessarily reject his claim of plain error.

In an effort to stave off application of the forfeiture doctrine, appellant next frames the issue in terms of command influence. *See generally United States v. Kirk,* 31 M.J. 84, 89 (C.M.A.1990); *United States v. Thomas,* 22 M.J. 388, 393 (C.M.A.1986) (allegations predicated on unlawful command influence may be corrected even absent plain error). As noted above, this involves two steps: claiming that SFC Y's testimony was a euphemism recommending a punitive discharge, and then cloaking that testimony with the authority of the commanding officer who also testified concerning the subject of appellant's rehabilitative potential.[4]

■ Turning again to the facts, the company commander was neither aware of, nor adopted in any way, the testimony of SFC Y. Further, nothing in the context of the sentencing presentations supports any inference that the sentencing panel melded these separate opinions into one "mass" and then viewed it as either a command position or the specific position of the commander. Accordingly, we find no issue of command influence present in this case. Given our holding on plain error, we believe forfeiture properly applies.

■ Notwithstanding our view that the issue was forfeited, we will consider appellant's claim of "euphemism." This assertion, however, is more troubling. The concept is difficult, if not almost impossible, to apply. To a large degree it is like beauty; it exists in the eye of the beholder and, as noted in *Malone,* is dependent on the circumstantial context in which it occurs. *Malone,* 38 M.J. at 709. Further, even when present, euphemistic statements do not consistently produce reversible error. In some cases, a rational basis for the statement has kept it from being condemned, while in other cases no relief was granted due to an absence of prejudice. *See, e.g., Wilson,* 31 M.J. at 93; *United States v. Gunter,* 29 M.J. 140 (C.M.A. 1989). *See also United States v. Aurich,* 31 M.J. 95 (C.M.A.1990); *United States v. Stimpson,* 29 M.J. 768 (A.C.M.R.1989); *Powell,* 45 M.J. 637. Thus, as noted in *Powell:*

> *Olano* did not establish new law. Instead, its primary importance is a reminder that even if plain error is found, corrective action does not necessarily follow. Further analysis is required to determine whether an appellate court should exercise discretion in granting relief. Such discretion should be exercised rarely, and only if the plain error seriously affected the fairness, integrity, or public reputation of the proceeding, or to avoid a miscarriage of justice.

*Powell,* 45 M.J. at 641. *Accord Cherry,* 31 M.J. at 5 ("[Euphemisms] by themselves do not warrant reversal of appellant's sentence. Prejudice is required." (citations omitted)).

This tendency to find no error or no reversible error has been particularly notable in more recent decisions.[5] *Compare Kirk,* 31 M.J. 84; *Cherry,* 31 M.J. 1; *United States v. Antonitis,* 29 M.J. 217 (C.M.A.1989); and *Ohrt,* 28 M.J. 301 (euphemisms; sufficient

---

4. This language is necessary to avoid the observation in *Malone* that "noncommissioned officers normally are incapable of exerting improper command influence over a sentencing authority." *Malone,* 38 M.J. at 710.

5. As such, we believe that the time may have arrived for reconsideration of this concept. There is a natural tension occasioned by the *Horner/Ohrt* limitations to the express language of R.C.M. 1001(b)(5). The concept of "euphemism" exacerbates this tension almost to the breaking point and has generated a great deal of litigation, some of which strains the bounds of creativity. It has also engendered gamesman-

ship. *See, e.g., United States v. Sylvester,* 38 M.J. 720 (A.C.M.R.1994).

Unlike a direct statement recommending imposition of a particular punishment, which is obviously inappropriate and must be condemned, "euphemisms" are by nature coded or imprecise, statements. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 784 (1981) states that a euphemism is "1: ... allusion to an offensive thing by an inoffensive expression ... 2: a polite, tactful, or less explicit term used to avoid the direct naming of an unpleasant, painful, or frightening reality."

As such, euphemisms tend toward the subjective. Yet in many cases they represent legitimate

prejudice to warrant rehearing on sentence) with *Sylvester,* 38 M.J. 720; *Corraine,* 31 M.J. 102; *Aurich,* 31 M.J. 95; *Wilson,* 31 M.J. 91; *Gunter,* 29 M.J. 140; *Powell,* 45 M.J. 637; *Malone,* 38 M.J. 707; and *Stimpson,* 29 M.J. 768 (some statements held not to be euphemisms; as to those which were, harmless error was found due to insufficient evidence of prejudice).

Based on our review of its context, we find that SFC Y's testimony was not a euphemism signaling to the panel that it should adjudge a punitive discharge. Rather, the record shows this testimony to be the honest, realistic and, as noted above, rationally based observation of an NCO supervisor. That opinion established that appellant's character and performance indicated that he could not, or would not, conform to Army standards. We believe such testimony, strikingly similar to that rendered in *Wilson,*[6] was clearly helpful to the members within the meaning of Mil.R.Evid. 701, and could not have been reasonably interpreted as a recommendation for a punitive discharge. *See Malone,* 38 M.J. at 710. *But see Sylvester,* 38 M.J. 720; *Stimpson,* 29 M.J. 768.

█ Assuming arguendo, that SFC Y's testimony constitutes an impermissible euphemism and that its admission was obvious error, we do not find it to require sentence relief. This was a guilty plea case. Appellant negotiated a pretrial agreement with the convening authority which limited his punishment to nothing greater than a dishonorable discharge, confinement for four years, forfeiture of $250.00 pay per month for forty-eight months, and reduction to Private E1. The officer panel's sentence was substantially under appellant's agreed-to sentence cap. Further, this was the testimony of an NCO before an all officer panel. Nothing in this testimony contradicts the observation in *Malone,* or otherwise suggests that it unduly influenced the panel. These facts, coupled with the nature of the offenses, and all of the evidence presented on the merits and sentencing, provide no indication that the testimony of SFC Y was either substantial or unfairly affected the proceedings. Thus, we find no basis to conclude that appellant suffered any prejudice to his substantial rights such that relief on any theory would be warranted.

We have reviewed the remaining assignments of error personally asserted by appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), and find them to be without merit. Specification 2 of Charge IV and Specification 2 of Additional Charge I, and Specifications 1 and 2 of Additional Charge IV are consolidated by inserting in Specification 2 of Additional Charge I and Specification 1 of Additional Charge IV, respectively, the words "possess and." The findings of guilty of Specification 2 of Additional Charge I and Specification 1 of Additional Charge IV, as so amended, are affirmed. The findings of guilty of Specification 2 of Charge IV and Specification 2 of Additional Charge IV are set aside and those specifications are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted and, the entire record, the court affirms the sentence. *United States v. Sales,* 22 M.J. 305 (C.M.A.1986).

Senior Judge GORDON and Judge JOHNSTON concur.

---

efforts by the witness to render an honest evaluation of an accused which, if properly shaped and clarified at trial by further examination, both on direct and cross, can produce testimony "helpful to a clear understanding . . . of the determination of a fact in issue." Mil.R.Evid. 701.

Thus, in our view, we believe a better approach might be to abandon the concept of euphemism in favor of encouraging the trial participants to use the tools available to them at their level to clarify testimony and then address remaining issues. This can be done through the use of Article 39(a), UCMJ, motion sessions and vehicles such as motions to strike, withdrawal of testimony, or limiting instructions. If not done, then application of the doctrine of forfeiture would become appropriate.

6. In *Wilson,* after testifying to a basis of knowledge sufficient to establish a proper foundation, the accused's first sergeant opined that as far as rehabilitative potential was concerned, the accused would be unable to function in the Army. This testimony was held not to constitute a euphemism "concerning what punishment would be appropriate for the offense." *Wilson,* 31 M.J. at 93.