UNITED STATES, Appellee,

v.

Sergeant Michael K. BARBER,
553–57–9106, United States
Army, Appellant.

ACMR 8702027.

U.S. Army Court of Military Review.

31 Jan. 1989.

For Appellant: Major Russell S. Estey, JAGC, Major Eric T. Franzen, JAGC, Captain Scott A. Hancock, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Gary L. Hausken, JAGC, Captain Anne E. Ehrsam, JAGC (on brief).

Before MYERS, SMITH, and BASHAM, Appellate Military Judges.

## OPINION OF THE COURT

BASHAM, Judge:

Pursuant to his pleas, appellant was convicted by a general court-martial composed of officer and enlisted members of violating a regulation by wrongfully purchasing duty or tax-free goods for illegal transfer and production of income through sale (Specification 1 of the Charge), violating another regulation by wrongfully transferring such goods to unauthorized persons (Specification 2), and violating both regulations by failing to account for such goods (Specification 3), in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892 [hereinafter UCMJ]. He was sentenced to total forfeitures, confinement for two years, and a bad-conduct discharge. In accordance with a pretrial agreement, the convening authority approved only so much of the sentence as provides for total forfeitures, confinement for twelve months, and a bad-conduct discharge. Before this court, appellant alleges several errors, three of which merit discussion.

### I

At trial, defense counsel made a motion *in limine* to exclude the testimony of Command Sergeant Major [CSM] Finney because he would be testifying about the evils of blackmarketing and his philosophy of sentencing in blackmarketing cases. Defense counsel further argued that CSM Finney's testimony would be especially damaging because of his status as command sergeant major of the 2d Infantry Division and the "alter ego" of the commanding general. The military judge denied the motion as well as a defense request for an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session to question CSM Finney on what, if anything, he had told senior enlisted members on what they should be doing about blackmarketing. The military judge pointed out to defense counsel that he could conduct a pretrial interview of CSM Finney and use any information from that interview in conducting *voir dire* of the panel members.

In the presentencing portion of appellant's court-martial, evidence was presented, through the testimony of CSM Finney, regarding the problem of blackmarketing in the command. As CSM Finney admitted that he did not know appellant very well, appellant complains that this testimony was related only "to the general crime of blackmarketing" and not directly related to or resulting from the offenses of which he was convicted. Appellant argues that CSM Finney's testimony did not meet the standard for aggravation evidence under Rule for Courts–Martial 1001(b)(4),[1] and hence, was not admissible. We agree that the trial judge erred by permitting the testimony, but for a reason other than that argued by appellant.

---

1. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 1001(b)(4) [hereinafter M.C.M., 1984, and R.C.M., respectively]

(trial counsel may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses).

■ Evidence in aggravation may include "evidence of significant adverse impact on the mission, discipline, or efficiency of the command directly and immediately from the accused's offense." R.C.M. 1001(b)(4) discussion. Such evidence needs a reasonable linkage between the offense and its alleged effect. *United States v. Witt*, 21 M.J. 637 (A.C.M.R.1985), *petition denied*, 22 M.J. 347 (C.M.A.1986). The linkage between the offenses and the aggravating circumstances is established when it can be shown that the offenses contributed to those effects which the government is trying to introduce into evidence. *Id.* at 641.

■ In this case, appellant was convicted of violating regulatory provisions by his blackmarketing activities. As this court has previously noted,

the United States Army sends military forces into the sovereign nation of the Republic of Korea for mutually beneficial reasons of national security.... [T]he import and export of goods to and from the Republic of Korea by members of the United States Armed Forces are matters of political concern between the Republic of Korea and the United States of America.

*United States v. Battle*, 20 M.J. 827, 828 (A.C.M.R.1985), *petition denied*, 21 M.J. 317 (C.M.A.1985). The Agreement on the Status of United States Armed Forces in Korea [SOFA] contains "vital agreements concerning sensitive customs matters" and the regulations violated here are designed to prohibit conduct in violation of the SOFA. *Id.* at 828. Thus, blackmarketing activities clearly impact on the mission of the 2d Infantry Division and we are convinced that there is "reasonable linkage" between the effects of blackmarketing on the command and an individual act of blackmarketing within the command. *Cf. United States v. Needham*, 23 M.J. 383 (C.M.A.1987) (extracts of periodicals on history, nature, and effects of certain drugs

were admissible in aggravation where accused was convicted of drug distribution).

We, however, must go beyond the question of "reasonable linkage" to determine the admissibility of evidence under Military Rule of Evidence 403.[2] "[T]he same balancing test required under Mil.R.Evid 403 applies equally to evidence received during findings and sentencing." *United States v. Martin* 20 M.J. 227, 229 (C.M.A.1985), *cert. denied*, 479 U.S. 917, 107 S.Ct. 323, 93 L.Ed.2d 295 (1986). Military Rule of Evidence 403 requires that relevant evidence "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."

■ Had the military judge properly applied Mil.R.Evid 403 in this case, we believe he would have excluded the entire testimony of CSM Finney. Conceding that CSM Finney's testimony was relevant, it was marginally so. He barely knew the accused and knew nothing about the offenses before the court. The regulation about which he was testifying was promulgated by a higher headquarters and no basis was established for the opinion he offered that blackmarketing was probably the number one crime in the division. He testified that his knowledge of blackmarketing was derived from his daily reading of the military police blotters.[3] Balanced against the probative value of that testimony was the prejudicial effect of having the senior enlisted soldier in the Division present what was essentially a law and order speech to a court comprised in part of enlisted soldiers from that Division.

■ In addition to his testimony on the effects of blackmarketing, CSM Finney testified that, in order to stop blackmarketing, the "judicial system [needed to] send[ ] a clear message that it is going to deal with the problem." Clearly, the admission of this testimony was error. "[T]he court-martial alone is entrusted with the respon-

---

2. M.C.M., 1984, Mil.R.Evid. 403 [hereinafter Mil.R.Evid.].

3. The choice of CSM Finney to testify about the pervasiveness and consequences of blackmark-

eting in the command is suspect, especially in light of the probable availability of other personnel who had specific knowledge of and were directly responsible for law enforcement and the day-to-day implementation of the SOFA.

sibility of representing the community in arriving at an appropriate sentence for an accused ... for it is the court-martial alone that has seen the evidence and must make the decisions." *United States v. Pearson,* 17 M.J. 149, 153 (C.M.A.1984). "[T]he alleged desires of society or any particular segment of society [cannot] be allowed to interfere with the court's independent function." *Id.* Testimony implying that a unit is waiting to see how an accused is punished violates this fundamental sanctity of the court-martial. *Id.* It is improper to allow witnesses to testify that in their opinion, certain offenses should be dealt with harshly by courts-martial in order to curb the occurrence of similar offenses in the future. *Cf. United States v. Horner,* 22 M.J. 294, 296 (C.M.A.1986) (testimony regarding witness' opinion as to the type of punishment which should be adjudged for a particular crime was improper); *United States v. Scott,* 27 M.J. 889 (A.C.M.R.1989) (the testimony of the battalion commander, who was excused as a court member from the panel that tried the accused, was improper because the commander's opinion was based upon his view of the severity of the offense). Witnesses are to impart their "special insight into the *accused's* personal circumstances" and not to tell the court what in their opinion will prevent further criminal conduct. *United States v. Horner,* 22 M.J. at 296 (emphasis in original). Had the military judge held the requested Article 39(a) hearing on the testimony of CSM Finney, or had he instructed the witness and the members on the impropriety of this testimony, this error might have been avoided. We are convinced that the cumulative effect of this error, coupled with the failure of the military judge to exclude the entire testimony at the outset, requires a rehearing on sentence.

## II

■ At trial and before this court, appellant asserts that the regulatory requirement that he account upon request for the disposition of controlled items he had purchased violates his rights under the Fifth Amendment. Appellant's motion at trial was a timely assertion of the privilege against self-incrimination, thereby preserving the issue for review on appeal. Since appellant made out a *prima facie* case that his responses to the request to account for controlled items he had purchased would have been incriminatory, we find that the military judge erred in denying appellant's motion to dismiss the specification alleging failure to disclose (Specification 3 of the Charge). *United States v. Williams,* 27 M.J. 710, 720 (A.C.M.R.1988). The conduct for which appellant was prosecuted was "constitutionally immune from punishment." *Id.* at 720 (citing *United States v. United States Coin & Currency,* 401 U.S. 715, 724, 91 S.Ct. 1041, 1046, 28 L.Ed.2d 434 (1971)). Furthermore, appellant's plea of guilty to that specification is improvident because the military judge did not obtain an affirmative withdrawal of the constitutional defense. *Id.* at 725–26. We will set aside and dismiss the offending specification.

## III

■ Appellant also contends that Specifications 1 and 2 of the Charge (wrongful purchase for illegal transfer and illegal transfer, respectively) were multiplicious for findings and sentence. Based on the facts in this case, we will consolidate the specifications. The specifications were not treated as multiplicious at trial, however, the resolution of this case will resolve any prejudice appellant may have suffered.

Specifications 1 and 2 of the Charge are consolidated as the Specification of the Charge, to read as follows:

In that Sergeant Michael K. Barber, U.S. Army, Headquarters and Headquarters Company, 2d Infantry Division, did, at various post exchanges located throughout the Republic of Korea, a location outside the territorial limits of the United States, on various occasions between on or about 20 December 1986 and on or about 4 January 1987, violate a lawful general regulation, to wit: paragraph 39j, United States Forces Korea Regulation 60–1, dated 25 February 1985, and paragraph 18(a)(1) of United States

Forces Korea Regulation 27–5, dated 20 May 1986, respectively, by wrongfully purchasing duty-free goods and tax-free goods of Korean origin for illegal transfer or production of income through sale, barter, or exchange (e.g., blackmarket activities) and by wrongfully selling, transferring, or otherwise disposing of in the ROK such goods to persons not authorized duty-free import privileges or tax-free purchase privileges under the US–ROK SOFA or other ROK–US agreements; such goods including: 12 video cassette recorders, 7 music systems, 2 televisions, 3 laser discs, 4 compact discs, 2 cassette decks, and 1 cassette radio, of a value of about $16,405.00.

On consideration of the entire record, including consideration of the issues personally raised by appellant and in light of *United States v. Lee*, 25 M.J. 457 (C.M.A. 1988), the finding of guilty of Specification 3 of the Charge is set aside and Specification 3 of the Charge is dismissed. The findings of guilty of the modified Specification and the Charge are affirmed. The sentence is set aside. A rehearing on the sentence may be ordered by the same or a different convening authority.

Senior Judge MYERS and Judge SMITH concur.