*202 ERDMANN, Judge,
with whom EFFRON, Chief Judge, joins (dissenting):
This case involves four issues: (1) whether the Government established sufficient foundation for the testimony of the rebuttal witnesses it called during the sentencing portion of the court-martial; (2) whether that testimony was proper under United States v. Ohrt, 28 M.J. 301 (C.M.A.1989); (3) whether the rebuttal testimony from five senior officers and senior noncommissioned officers from the command structure raised the specter of unlawful command influence; and (4) whether the admission of this testimony was prejudicial. As this court noted in United States v. Griggs, 61 M.J. 402, 409 (C.A.A.F.2005):
The chief concerns underlying these cases are the need to have “a rational basis for” an opinion concerning rehabilitation and the importance of avoiding command influence in the sentencing process. These concerns coincide with the UCMJ’s overarching concern regarding undue command influence.
(Citations and quotation marks omitted.)
I respectfully dissent from the majority’s conclusion that even if the admission of the rebuttal testimony constituted plain or obvious error, there was no prejudice. I agree with the United States Army Court of Criminal Appeals’ determination that the Government’s rebuttal testimony lacked proper foundation and its admission constituted plain and obvious error. However, I do not believe that the defense retention testimony, whether proper or not, opened the door to allow the Government to introduce otherwise inadmissible “euphemism” testimony on rebuttal. In addition, the military judge failed to give cautionary instructions addressing the proper purposes for which the rebuttal testimony was admitted and the potential for unlawful command influence. Under these circumstances, I cannot be confident that this improper testimony did not substantially influence the sentence. I would set aside the sentence and remand the case for a sentence rehearing.

Relationship of R.C.M. 1001(b)(5) to R.C.M. 1001(d)

I agree that there is no reference in Rule for Courts-Martial (R.C.M.) 1001 which would specifically make R.C.M. 1001(b)(5) applicable to R.C.M. 1001(d). However, the requirement for a witness to possess a rational basis for an opinion concerning the rehabilitative potential of an accused found in R.C.M. 1001(b)(5), is also embodied in both Military Rule of Evidence (M.R.E.) 602 and M.R.E. 701, and testimony admitted pursuant to R.C.M. 1001(d) must also satisfy those provisions.[1]
This requirement has been long recognized by this court:
Mil.R.Evid. 701 governs admissibility of lay-opinion testimony, and it applies to evaluative statements offered under RCM 1001(b)(5). United States v. Susee, 25 MJ [538] at 540 [ (ACMR 1987) ]. Only “opinions ... which are ... rationally based on the perception of the witness and ... helpful to a clear understanding of the testimony of the witness o[r] the determination of a fact in issue” are admissible. Mil. R.Evid. 701. Thus, a foundation must be laid to demonstrate that the witness does possess sufficient information and knowledge about the accused- — his character, his performance of duty as a servicemember, his moral fiber, and his determination to be rehabilitated — to give a “rationally based” opinion....
In United States v. Horner, ... we tried to make it clear that “rehabilitative potential” refers to the accused. It is based upon an “assessment of ... [the accused’s] character and potential.” 22 MJ at 296. Thus, a witness whose opinion is based upon factors other than an assessment of the accused’s service performance, character, *203 and potential does not possess a rational basis for expressing an opinion.
Ohrt, 28 M.J. at 303-04.

Foundational Basis for Rebuttal Testimony

The Government called five members of the 10th Special Forces Group command structure to rebut the defense sentencing witnesses:

Major Peltier

Major (Maj.) Peltier was the Acting Battalion Commander of the 3rd Battalion, 10th Special Forces Group. He testified that it was his opinion, based on Eslinger’s pattern of misconduct, that he should not deploy with the unit or even be in the Army. On cross examination Maj. Peltier agreed that his opinion was based on what the Battalion Commander and prosecutors had told him. He did not testify as to any personal knowledge of Eslinger and acknowledged that he had never been on the same team with him and had never deployed with him. He testified that he had not been aware of Eslinger’s two General Officer Memorandums of Reprimand (GOMORs) for driving under the influence of alcohol or his civilian criminal conviction until the day before trial.
Addressing the foundation established by the Government for Maj. Peltier’s testimony, the majority held that “it was not unreasonable for the military judge to infer that the executive officer of a Special Forces Battalion would have direct and personal knowledge of a senior enlisted member in the command.” I do not believe that such an inference meets the foundational standard of a “rationally based” opinion that is required for the admission of this evidence. See United States v. Kirk, 31 M.J. 84 (C.M.A.1990).[2] Maj. Peltier’s testimony was not rationally based and therefore lacked proper foundation.

Sergeant Major Krider

Sergeant Major (SGM) Krider was the Acting Command Sergeant Major for the 3rd Battalion, 10th Special Forces Group. He testified that he vaguely knew Eslinger, “in a distant manner.” He testified that Eslinger should not continue to serve in the Special Forces or the Army and primarily based that opinion on Eslinger’s conviction for possession of child pornography. The defense objected to the testimony of SGM Krider because his opinion was primarily based on Eslinger’s conviction for possession of child pornography and asked that the military judge instruct the members to disregard the testimony. In response, the military judge properly instructed the members to disregard the testimony of SGM Krider.

Master Sergeant Stensgaard

Master Sergeant (MSG) Stensgaard was a team sergeant in the tactical support detachment in the Group Support Battalion of the 10th Special Forces Group. MSG Stens-gaard testified that he had been Eslinger’s team sergeant for two years and had trained and deployed with him. The majority held that sufficient foundation was established for MSG Stensgaard’s testimony and I agree.

Colonel Tovo

Colonel (Col.) Tovo was the Group Commander of the 10th Special Forces Group. He testified that he was aware that Eslinger had been convicted of possession of child pornography, had received two GOMORs for alcohol-related driving incidents, and had been convicted in civilian court of criminal trespass. As noted by the majority, Col. Tovo based his opinions on Eslinger’s reputation in the command and there is nothing in the record which indicates that he had any personal knowledge of Eslinger. He testified that he did not want Eslinger back in his unit, did not want to deploy with him, and did not want him in the Army. The majority *204 recognized that the foundation for Col. Tovo’s testimony was “not as strong as it could have been” but in the context of plain error held that the military judge did not abuse his discretion in admitting the testimony.
As noted in United States v. Horner, this type of testimony is not helpful as “[t]he witnesses’ function in this area is to impart his/her special insight into the accused’s personal circumstances.” 22 M.J. 294, 296 (C.M.A.1986). There is nothing in the record that establishes a rational basis for Col. Tovo’s insight into Eslinger’s personal circumstances or his potential for rehabilitation and therefore his testimony lacked a proper foundation.

Command Sergeant Major Sekelsky

Command Sergeant Major (CSM) Sekel-sky was the 10th Special Forces Group Command Sergeant Major. The defense objected to CSM Sekelsky’s testimony as being cumulative with Col. Tovo’s testimony, but the military judge overruled the objection when he determined that CSM Sekelsky had more personal knowledge than Col. Tovo. The military judge then asked if the defense had any further objections to CSM Sekelsky’s testimony and defense counsel responded “No Sir.” I agree with the majority that this response affirmatively waived the issue of proper foundation for CSM Sekelsky’s testimony.
The rebuttal testimony of both Col. Tovo and Maj. Peltier lacked proper foundation. Given the numerous decisions of military courts on this issue, the military judge’s admission of that testimony constituted plain and obvious error.

Inadmissible “Euphemism" Testimony on Rebuttal

The majority recognized the “thin line between an opinion that an accused should be returned to duty” which is permissible testimony, and the “expression of an opinion regarding the appropriateness of a punitive discharge” which is impermissible testimony. In Griggs, 61 M.J. at 409, we explained:
Obviously, an accused cannot return to serve in his unit if he receives a punitive discharge. But an explicit declaration that an accused should not receive a punitive discharge or that any such discharge should be of a certain severity is disallowed for the defense not because of R.C.M. 1001(b)(5)(D), but because such evidence invades the province of the members to decide alone on punishment. Ohrt, 28 M.J. at 305 (“The question of appropriateness of punishment is one which must be decided by the court-martial; it cannot be usurped by a witness.”).
(Citation omitted.)
This prohibition is not limited to express recommendations of a particular sentence, but also includes euphemisms:
a commander as a sentencing witness cannot recommend a particular sentence to a court-martial or employ euphemisms in his testimony which ineluctably lead to the same result. Here, the commander testified, “I think it would be, you know, a waste of Air Force resources to retain her.” This language rationally conveys the commander’s opinion that appellant should be separated, which is an impermissible comment under United States v. Ohrt.
Kirk, 31 M.J. at 89 (citations omitted).
This conclusion is based on the obvious fact that courts-martial have no authority to sentence an accused to any discharge other than a punitive discharge. When a senior officer or senior noncommissioned officer opines that an accused should not be in the Army (or other service), the message to the members is that the accused should receive a punitive discharge. Every Government rebuttal witness in this case testified that Es-linger should either not remain in the service or in the Army. This testimony infringed upon the province of the members and was improper.[3]
*205 As we recognized in Griggs, even when permissible testimony in this area is admitted, the military judge should provide “a tailored instruction focusing on the distinction between a punitive discharge, which is for the members to decide, and the willingness of a servicemember to serve with an accused again.” 61 M.J. at 409. No tailored instruction was provided in this case and the members were left with no guidance as to how to properly consider the rebuttal testimony.

The Specter of Command Influence

As recognized by the majority, when the Government presents rebuttal testimony to defense retention testimony, the military judge must be vigilant for the “specter of command influence.” This is particularly true when the rebuttal witnesses include the Group Commander, the Acting Battalion Commander, the Group Command Sergeant Major, and the Acting Battalion Command Sergeant Major. When senior officers and noncommissioned officers testify that an accused should not be in the Army, not only does that testimony improperly invade the province of the panel, the specter of command influence is certainly present.
We have often noted that:
Congress and this court are concerned not only with eliminating actual unlawful command influence, but also with “eliminating even the appearance of unlawful command influence at courts-martial.” United States v. Rosser, 6 M.J. 267, 271 (C.M.A.1979).
United States v. Lewis, 68 M.J. 405, 415 (C.A.A.F.2006).
The majority correctly recognizes the import of a properly tailored instruction under these circumstances, but appears unconcerned that no tailored instruction was given in this case. The majority finds that the “standard instruction to the members to guide them in their decision on whether to award a punitive discharge” was sufficient. Eslinger, 70 M.J. at 201. That instruction, however, did not address the issue of command influence. Where, as here, the Government rebuttal witnesses included the senior leadership of the 10th Special Forces Group and the battalion to which Eslinger was assigned, properly tailored instructions advising the members of the limited use for which the testimony was admitted and which also addressed the concerns of command influence, were essential. See Griggs, 61 M.J. at 409.
Under these circumstances, the lack of foundation for the testimony of the two senior rebuttal witnesses, the admission of impermissible euphemism testimony, and the lack of any tailored instructions constituted plain and obvious error.

Prejudice

“We test the erroneous admission or exclusion of evidence during the sentencing portion of a court-martial to determine if the error substantially influenced the adjudged sentence.” Id. at 410. The majority opinion relies on six factors in concluding that any error in regard to the admission of the rebuttal evidence was harmless. The majority opinion initially notes that “Appellant’s possession of child pornography was extensive .... Appellant collected it over time and in multiple locations [and i]t included 1,700 images, including infants being sodomized and vaginally penetrated.” Eslinger, 70 M.J. at 201 (citation omitted). Notwithstanding the significance of these facts, the court-martial panel sentenced Eslinger to only a fraction of the maximum authorized confinement — three out of a potential thirty years. Although I do not know the degree to which this sentence reflected the panel’s consideration of Eslinger’s years of service and the nature of that service, the relative brief *206 period of confinement demonstrates that the panel did not view the offenses as significantly diminishing the value of the evidence offered in extenuation and mitigation.
As to the second factor, the majority observes that “Appellant did not make the case that his conduct was in some manner the result of his combat experience.” Id. at 201. It is not apparent why the members would have expected Eslinger to have made this argument, nor is it apparent why the absence of this argument has any bearing on the question of prejudice.
Neither is it apparent how the absence of prejudice is demonstrated by the third factor relied on by the majority — that “Appellant faced a maximum punishment of thirty years of confinement [and] a dishonorable discharge [and] he received three years of confinement [and] a bad-conduct discharge.” Id. at 201. As noted in response to the first factor, the vast disparity between the maximum punishment and the actual punishment reflects the willingness of the members to give substantial consideration to the specific facts and circumstances of the offenses and the offender. At the same time, the punishment of three years of confinement and a bad-conduct discharge is sufficiently consequential to demonstrate the potential prejudice from the improper admission of sentencing evidence and lack of proper instructions as to how the panel should consider the rebuttal testimony and the potential for unlawful command influence.
As to the fourth factor, the majority states that Eslinger “had an extensive record of prior misconduct.” Id. at 201. In fact, the record reflects three incidents in the course of Eslinger’s eighteen-year military career: two GOMORs for driving under the influence of alcohol; and a state court conviction for third degree criminal trespass, to which Es-linger pleaded no contest in 2004. None of these incidents, either individually or cumulatively, resulted in any action for an administrative separation. Eslinger continued to serve in the Army, including completion of his third combat tour in Iraq. While it was certainly appropriate for the court-martial panel to consider these incidents during sentencing, they did not constitute “an extensive record of prior misconduct” and did not make it inevitable that he would receive a punitive discharge at trial.
The fifth factor relied upon by the majority is that “the military judge gave a standard instruction to the members to guide them in their decision on whether to award a punitive discharge and, if so, what kind.” Id. As noted earlier, this instruction did not inform the members as to how they should consider the rebuttal testimony when evaluating the appropriateness of a punitive discharge, nor did it address the issue of potential command influence.
Finally, the sixth factor relied upon by the majority notes that “Appellant was sentenced by a panel of six experienced members, including a colonel, two lieutenant colonels, a major, and two sergeants major.” Id. The record, however, does not indicate anything unusual with respect to this panel in terms of the application of the panel selection criteria under Article 25, UCMJ, 10 U.S.C. § 825 (requiring appointment of members “best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament”), amount of prior court-martial experience, or likelihood to have more or less concern for the opinions of the command leadership.

Summary

The rebuttal testimony of Col. Tovo and Maj. Peltier lacked a proper foundation. The testimony of all the Government’s rebuttal witnesses included impermissible “euphemism” testimony that invaded the province of the members. These errors were compounded by the failure of the military judge to give essential cautionary instructions addressing the proper purposes of the testimony and the potential for unlawful command influence. Under the circumstances, I cannot be confident that the improper testimony did not substantially influence the sentence. The sentence should be set aside and the case remanded for a new sentence hearing.

. Rather than holding that R.C.M. 1001(b)(5) literally applied to R.C.M. 1001(d), the Court of Criminal Appeals appears to have looked to R.C.M. 1001(b) to inform its analysis as to whether the Government rebuttal witnesses possessed the required rational basis for their expressed opinions, and then determined that they did not. United States v. Eslinger, 69 M.J. 522, 532-33 (A.Ct.Crim.App.2010). As the same foundational basis is required in M.R.E. 602 and M.R.E. 701, it was not error for the lower court to make that analogy.

. In Kirk, 31 M.J. at 88, the court noted:
In United States v. Horner, 22 MJ 294 (CMA 1986) this Court held that RCM 1001(b)(5), Manual for Courts-Martial, United States, 1984, requires that an admissible opinion on rehabilitative potential be based on an individual assessment of a servicemember's character and potential. In United States v. Ohrt, 28 MJ 301, 304 (CMA 1989), this Court said that it must be shown that a commander expressing such an opinion "does possess sufficient information and knowledge about the accused — his character, his performance of duty as a ser-vicemember, his moral fiber, and his determination to be rehabilitated — to give a ‘rationally based' opinion.”

. I do not agree with the Court of Criminal Appeals that because the defense presented retention evidence in the defense sentencing case that may have infringed upon the province of the members, that opened the door to allow the Government to introduce its own inadmissible testimony on rebuttal. Certainly the Government was entitled to present testimony as to whether others in the command wanted to continue to serve with Eslinger. However, even if *205 we were to assume that the defense sentencing evidence infringed upon the province of the members, the Government should not be permitted to subsequently introduce inadmissible evidence to rebut the evidence presented by the defense, no matter how far the door has been opened. See also Eslinger, 69 M.J. at 533-32. This particular theory of admissibility is sometimes called the "doctrine of curative admissibility” and notwithstanding this court's passing references in United States v. Pompey, 33 M.J. 266, 270 n. 2 (C.M.A.1991), United States v. Banks, 36 M.J. 150, 164 n. 15 (C.M.A.1992), and United States v. Haimson, 5 C.M.A. 208, 224 n. 2, 17 C.M.R. 208, 224 n. 2 (1954), this court has not adopted the doctrine, nor should it.