# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40252**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Brandon C. BARNES**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 15 June 2023

———————————

*Military Judge*: Christopher D. James (pretrial); Pilar G. Wennrich.

*Sentence*: Sentence adjudged on 25 October 2021 by GCM convened at Grand Forks Air Force Base, North Dakota. Sentence entered by military judge on 2 December 2021: Bad-conduct discharge, confinement for 15 months, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant*: Captain Thomas R. Govan, Jr., USAF.

*For Appellee*: Lieutenant Colonel Thomas J. Alford, USAF; Major Deepa M. Patel, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, CADOTTE, and GOODWIN, *Appellate Military Judges*.

Judge GOODWIN delivered the opinion of the court, in which Senior Judge RICHARDSON and Judge CADOTTE joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

GOODWIN, Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of one specification of viewing child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 15 months, forfeiture of all pay and allowances, and reduction to the grade of E-1.

The convening authority took no action on the findings or sentence. The military judge signed an entry of judgment reflecting the findings and sentence. Appellant raises three issues before this court: (1) whether the military judge committed plain error by permitting testimony linking Appellant's rehabilitative potential to the severity and nature of his offenses in violation of Rule for Courts-Martial (R.C.M.) 1001(b)(5)(C); (2) whether the word "possess" should be excepted from Specification 1 of the Charge and substituted with the word "view" on the charge sheet; and (3) whether Appellant's sentence is inappropriately severe.[2]

We have carefully considered issue (2) and find it does not require discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). Finding no error materially prejudicial to a substantial right of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

Appellant was stationed at Grand Forks Air Force Base, North Dakota, at the time of the offense for which he was convicted. On 4 May 2019, Appellant read an Internet web posting containing filenames of child pornography. Thereafter, Appellant searched for some of these files and found Internet users willing to share them on a peer-to-peer (P2P) file sharing network. Appellant created a folder entitled "Purge" on his computer into which he intended to download the files. Appellant then began to download numerous image and video files into the "Purge" folder. Prior to viewing any of the files and while some files were still downloading, Appellant browsed the filenames of the downloaded files and noticed some with names indicative of graphic sexual

---

[1] The specification for which Appellant was convicted is related to misconduct occurring after 1 January 2019. The convening authority agreed to withdraw and dismiss one specification of possession of child pornography occurring prior to 1 January 2019. Thus, unless otherwise stated, all references in this opinion to the UCMJ, Military Rules of Evidence, and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Issues two and three are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

content involving minors. Appellant opened some files with sexually explicit filenames and saw that they, in fact, contained child pornography.

On 4 May 2019, North Dakota Bureau of Criminal Investigations Special Agent (SA) JS was looking for evidence of child pornography on the above-referenced P2P file sharing network. During his search, SA JS discovered child pornography transmissions associated with an Internet protocol address later determined to be registered to Appellant. SA JS downloaded 24 files of suspected child pornography from Appellant's computer, however only ten of these files would open. Of the ten, six files—four images and two videos—depicted images of known child pornography.

On 24 May 2019, agents executed a search warrant of Appellant's residence and interviewed him. During his interview, Appellant admitted he lived alone, never had guests over, and never shared his secured Wi-Fi password with others. Appellant admitted he used a computer he had built himself and that he was familiar with the P2P network SA JS had been investigating.

During the guilty-plea inquiry with the military judge, Appellant admitted that one video he viewed showed a girl between 7 and 9 years old engaging in acts that constitute "sexually explicit conduct" as defined in the *Manual for Courts-Martial, United States* (2019 ed.), pt. IV, ¶ 95.c.(10). After viewing the downloaded images and videos, Appellant deleted them from his computer and canceled the ongoing download.

Appellant admitted that viewing these images and videos had a negative impact on the military because if members of the public knew of his actions and military affiliation, they would think less of the military. As part of his plea agreement, Appellant agreed to enter into a stipulation of fact, which was admitted into evidence as Prosecution Exhibit 12. Prosecution Exhibit 12 includes an attachment containing the four images and two videos discussed above. Appellant stipulated these images and videos show a prepubescent girl. They show sexually explicit conduct including lascivious exhibition of her genitals, oral to genital intercourse, and sexually explicit conduct with two different dogs. The filenames include "9yo," indicating the probable age of the child depicted therein.

## II. DISCUSSION

### A. Sentencing Testimony Regarding Rehabilitative Potential

Appellant claims that, despite the lack of a defense objection, the military judge erred by admitting and considering sentencing testimony regarding his rehabilitative potential. Appellant argues that Staff Sergeant (SSgt) TT, Appellant's former supervisor, based her opinion "primarily on the nature of [Appellant's] charged offense, in violation of R.C.M. 1001(b)(5)" and that the

military judge's admission and consideration of her testimony constituted plain error materially prejudicing Appellant's rights.

### 1. Additional Background

During sentencing, the Government presented two witnesses, SSgt TT and SSgt BO. SSgt TT supervised Appellant from approximately October until December 2018. During this time, SSgt TT observed Appellant approximately five days per week during their 12-hour shifts. SSgt TT testified that Appellant "pretty much [kept] to himself," "just kind of did his own thing," "wasn't the greatest worker in the shop," and lacked initiative. SSgt TT ultimately described Appellant's rehabilitative potential as "low."

During cross-examination, trial defense counsel questioned the basis for SSgt TT's opinion and asked whether Appellant "could work at a restaurant . . . and be productive in society in that regard" in the future. SSgt TT responded, "I personally don't [think so]. With what he is pleading guilty to, I don't think it's proper." SSgt TT continued, stating "I feel like it's hard to once somebody is attracted to, sexually attracted to it." When asked whether she based her opinion on Appellant's offense rather than on Appellant's background, SSgt TT testified that her opinion was based on what she knew of Appellant and "he never took initiative to actually do anything." SSgt TT also agreed with trial defense counsel that she viewed Appellant as "lackadaisical or at times, lazy." However, SSgt TT conceded not having personally given Appellant "paperwork regarding his work products," and that Appellant was able to complete his work. SSgt TT noted, however, that Appellant received paperwork from unit leadership.

During redirect examination, SSgt TT testified that she had discussed Appellant's future military plans with him and that Appellant "never really had a desire to make a career out of" the Air Force and planned on "hitting his high [year tenure] and then chopping out." SSgt TT concluded by describing Appellant as "one of the weakest links" on her team.

### 2. Law

Ordinarily, we review the military judge's admission of evidence for abuse of discretion. *United States v. Barker*, 77 M.J. 377, 383 (C.A.A.F. 2018) (citation omitted). However, claims of error with respect to the admission of evidence are preserved only if a party timely objects to the evidence and states the specific ground for the objection. Mil. R. Evid. 103(a)(1).

"When an appellant does not raise an objection to the admission of evidence at trial, we first must determine whether the appellant waived or forfeited the objection." *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018) (citation omitted). When an appellant affirmatively waives objection to the admission of evidence, the waiver also waives the right to complain about its admission on

appeal. *United States v. Ahern*, 76 M.J. 194, 198 (C.A.A.F. 2017) (citing *United States v. Campos*, 67 M.J. 330, 332–33 (C.A.A.F. 2009)).

If we find Appellant did not waive an issue but merely forfeited it, we review for plain error. *See United States v Sweeney*, 70 M.J. 296, 304 (C.A.A.F. 2011). Plain error occurs "where (1) there was error, (2) the error was plain and obvious, and (3) the error materially prejudiced a substantial right of the accused." *Id.* (citation omitted).

### 3. Analysis

The record contains no evidence regarding whether trial defense counsel strategically chose not to object to the rehabilitative potential testimony or whether Appellant affirmatively waived objection to the testimony. Consequently, we find forfeiture, not waiver and analyze for plain error.

A witness offering testimony on rehabilitative potential may consider both "performance of duty" and the "nature and severity of the offense" in forming their opinion. R.C.M. 1001(b)(5)(B). However, "testimony concerning rehabilitative potential is to be an 'assessment of . . . [the accused's] character and potential, . . . [not] the [witness's] view of the severity of the offense.'" *United States v. Claxton*, 32 M.J. 159, 161 (C.M.A. 1991) (omissions and first and second alterations in original) (quoting *United States v. Horner*, 22 M.J. 294, 296 (C.M.A. 1986)). Although SSgt TT may have considered Appellant's convicted offense in forming her opinion, she also based her opinion on her knowledge of him as his supervisor. The bulk of SSgt TT's testimony focused on Appellant's level of initiative and job performance, and the "nature and severity of [Appellant's] offense" did not serve as the principal basis for SSgt TT's opinion. *See* R.C.M. 1001(b)(5)(C). Consequently, we find SSgt TT's testimony was permissible under R.C.M. 1001(b)(5)(B), and its admission was not error. Furthermore, "[a]s the case was tried by military judge alone . . . , we are confident that the judge placed the testimony in proper perspective." *Horner,* 22 M.J. at 296.

## B. Sentence Appropriateness

Finally, Appellant argues his sentence was unduly severe. Without conceding that the other portions of his sentence are appropriate, Appellant specifically requests we disapprove his punitive discharge. We are not persuaded and accordingly deny relief.

### 1. Law

This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (footnote omitted). We "may affirm only . . . the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[ ], on the basis of the entire record, should be

approved." Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). Although we have broad discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

As our superior court has observed,

> Under Article 66(c), [UCMJ, 10 U.S.C. § 866(c),] Congress has furthered the goal of uniformity in sentencing in a system that values individualized punishment by relying on the judges of the Courts of Criminal Appeals to "utilize the experience distilled from years of practice in military law to determine whether, in light of the facts surrounding [the] accused's delict, his sentence was appropriate. In short, it was hoped to attain *relative* uniformity rather than an arithmetically averaged sentence."

*United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (second alteration in original) (quoting *United States v. Olinger*, 12 M.J. 458, 461 (C.M.A. 1982) (other citation omitted)).

### 2. Analysis

During sentencing, Appellant introduced mitigating evidence, including a letter of appreciation, character letters, and photographs. Appellant also introduced a written affidavit by forensic psychologist Dr. PS. Dr. PS diagnosed Appellant with "Autism Spectrum Disorder – unknown origin, *without* intellectual impairment, language impairment, or catatonia." According to Dr. PS, this condition leads to "deficits in social-emotional reciprocity, nonverbal communicative behaviors used for social interaction, and developing, maintaining, and understanding relationships." Dr. PS also opined that this condition leads to "restricted interests and repetitive behavior." Appellant also introduced a personal statement in which he discussed the impact his autism spectrum disorder had on him and his family during his formative years and his feelings of isolation and depression in the time leading up to his offense.

In addition to this mitigating evidence, Appellant points out that his misconduct was an isolated incident involving a small number of images and did not involve distribution of child pornography. He notes that "[o]n the spectrum of child pornography offenses, [his] offense was on the lower end." In support

of his contention, Appellant cites *United States v. Guihama*, No. ACM 40039, 2022 CCA LEXIS 672, at \*1 (A.F. Ct. Crim. App. 18 Nov. 2022) (unpub. op.).[3]

Appellant argues that his sentence is unduly harsh. In assessing Appellant's claim, we "utilize the experience distilled from years of practice in military law" as our superior court permits. *Lacy*, 50 M.J. at 288; *see also Ballard*, 20 M.J. at 286. Based on Appellant's convicted offense, he faced a maximum of ten years in confinement and a dishonorable discharge. His plea agreement required the military judge to adjudge a sentence which included a minimum of 12 and a maximum of 24 months' confinement, but included no other limitations on the adjudged sentence. Appellant's adjudged sentence included 15 months in confinement and a bad-conduct discharge.

We have given individualized consideration to Appellant, the nature and seriousness of the offense, Appellant's record of service, and all other matters contained in the record of trial. We conclude the sentence is not inappropriately severe.

### III. Conclusion

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[3] Guihama possessed over 10,000 images and videos containing child pornography. *Guihama*, unpub. op. at \*4. In addition to his convictions for possession, viewing, and distributing child pornography, Guihama was also convicted of aggravated sexual abuse of a minor on divers occasions and aggravated sexual abuse of a second minor. Guihama received a dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, and reduction to the grade of E-1. *Id*. at \*3–4.